

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-08-00136-CR

STEVEN WAYNE
COOPER A/K/A STEVE
COOPER

APPELLANT

V.

THE STATE OF TEXAS

STATE

------------

## FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## OPINION

------------

## I. Introduction

In three issues, Appellant Steven Wayne Cooper a/k/a Steve Cooper appeals his convictions and sentences for aggravated assault with a deadly weapon and aggravated assault. We affirm.

## II. Factual and Procedural History

### A. Factual Background

On June 14, 2007, Evelyn Cooper went to the Hood County Sheriff's Office to report threats Cooper had made to her the night before. Hood County Captain Clint Pullin took her report and advised her to seek a protective order. Cooper was waiting for Evelyn when she came home.

The next day, Nancy and Ronald Lock encountered Evelyn and Cooper at a convenience store. Evelyn was bloody and severely beaten up, she was crying blood, and "[h]er whole face was black and blue." Ronald did not recognize her at first, although he had known Evelyn most of his life. Photographs of Evelyn's injuries were admitted and published to the jury. She suffered fractures of her facial bones and both of her eyes were blackened.

Evelyn told Nancy that Cooper was inside the house when she came home and that he told her she was going to die and that he knew from watching forensic television shows how to get away with it. Ronald said that Evelyn told them that Cooper tied her to a chair, beat on her with a pipe, hit her in the face and ribs, and only untied her because he had run out of beer and needed to go to the convenience store.

Evelyn stated that she could not swear that Cooper hit her with a pipe, but he did hit her in the face with his fist and tie her up with electrical wire and duct tape, and he told her that she was going to be with her mother, who had passed away two years before. She testified that Cooper had a drinking problem and

2

would sometimes become abusive, although he never hit her until June 2007.[1]

Evelyn also testified that Cooper had some mental problems—he was bipolar and schizophrenic—and that, when he drank, the mental problems worsened.

Ronald fought Cooper to keep him away from Evelyn. After Ronald "took him down to the ground," Cooper got up, got into his car, and took off. Lieutenant Bill Haynes testified that authorities found Cooper's abandoned vehicle and had to track Cooper with a police dog. Cooper fought the deputies as they tried to take him into custody. The deputies found a rifle in the back seat of Cooper's vehicle during an inventory search.

## B. Procedural Background

In September 2007, a grand jury returned an indictment on Cooper for the following alleged acts, occurring on or about June 15, 2007:

- Count 1: Intentionally or knowingly causing bodily injury to Evelyn Cooper by striking her in her stomach and left breast area while using or exhibiting a deadly weapon (metal pipe);

- Count 2: Intentionally or knowingly causing serious bodily injury to Evelyn Cooper by repeatedly striking her in the face and head with his fists.

- Count 3: Intentionally or knowingly possessing a firearm after he had been convicted of felony DWI on April 1, 2004;

- Count 4: Intentionally fleeing, using a vehicle, from James Cromwell, a peace officer who was attempting to lawfully arrest or detain him.

---

[1]Evelyn's sister testified that there had been numerous incidents of violence between Evelyn and Cooper before June 2007.

3

The indictment also included one enhancement paragraph (an August 10, 2004 felony DWI conviction) and three habitual offender counts: a February 10, 1995 felony criminal mischief conviction; a May 7, 1991 felony aggravated assault with a deadly weapon conviction; and a May 24, 1991 felony bodily injury to a child conviction.

In October 2007, the trial court found Cooper incompetent and sent him to a state hospital to regain competency for trial. Once returned to the trial court, Cooper pleaded guilty to counts 1 and 2, and the jury assessed sixty years' confinement for count 1, after finding that a deadly weapon had been used, and twenty-five years' confinement for count 2. The trial court set the sentences to run concurrently.

### III. Mental Competence

In his first two issues, Cooper argues that the trial court erred by accepting his guilty plea and by trying him without first determining that he was competent to stand trial.

### A. Due Process

Under the Due Process Clause of the Fourteenth Amendment, a trial court may not accept a criminal defendant's guilty plea unless that defendant is legally competent to make such a plea. *See Godinez v. Moran*, 509 U.S. 389, 400, 113 S. Ct. 2680, 2687 (1993). And once a defendant has been adjudged incompetent, "on the return of a defendant to the court, the court shall make a determination with regard to the defendant's competency to stand trial." Tex.

4

Code Crim. Proc. Ann. art. 46B.084(a) (Vernon Supp. 2010); *see also Bradford v. State*, 172 S.W.3d 1, 4–6 (Tex. App.—Fort Worth 2005, order) (abating appeal and remanding case to the trial court to make a judicial determination regarding appellant's competency at the time of the adjudication hearing), *disp. on merits*, No. 02-04-00414-CR, 2005 WL 1926409 (Tex. App.—Fort Worth Aug. 11, 2005, no pet.) (mem. op., not designated for publication). *See generally Thomas v. State*, No. AP-75218, 2008 WL 4531976, at *13–14 (Tex. Crim. App. Oct. 8, 2008) (not designated for publication) (noting that while a better practice is for the trial court to make the competency determination prior to trial, a retrospective one will suffice).

The record must contain a judgment, order, docket entry, or other evidence that the trial court actually made a determination of competency. *Schaffer v. State*, 583 S.W.2d 627, 631 (Tex. Crim. App. 1979) (op. on reh'g); *see also Johnson v. State*, Nos. 02-05-00205-CR, 02-05-00206-CR, 2006 WL 2578033, at *5 (Tex. App.—Fort Worth June 22, 2006, order) (not designated for publication) ("Letters from a psychiatrist or psychiatric evaluations containing recitations of competency are evidentiary only; they cannot operate as a substitute for a judicial fact finding of a defendant's competency to stand trial."), *disp. on merits*, 2006 WL 2310085 (Tex. App.—Fort Worth Dec. 6, 2006, pet. ref'd) (mem. op., not designated for publication). *Compare Fuller v. State*, 11 S.W.3d 393, 395 (Tex. App.—Texarkana 2000, order) (abating for judicial determination of competency when record contained no judgment, order, docket sheet entry, or

5

other evidence that the trial court ever made a determination of appellant's competency to stand trial), *disp. on merits*, 30 S.W.3d 441 (Tex. App.—Texarkana 2000, pet. ref'd), *with Bell v. State*, 814 S.W.2d 229, 233 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (holding that recitations of competency in judgments of prior convictions for DWI were sufficient to allow State to use them to raise current DWI charge to a third-degree felony).

## B.  Competence Determination by the Trial Court

### 1.  Pretrial

In September 2007, a week after the grand jury filed Cooper's indictment, Cooper's original trial counsel, Pamela Walker, filed a motion suggesting incompetency and a request for examination.  *See* Tex. Code Crim. Proc. Ann. art. 46B.004 (Vernon 2006).  The trial court issued an order for William B. Norman, Ph.D. to conduct an examination regarding incompetency and, after considering Dr. Norman's report, issued a judgment finding Cooper incompetent and committing him to a mental hospital until he could attain competency to stand trial.  *See id.* arts. 46B.005 (Vernon 2006), .073 (Vernon Supp. 2010).

In February 2008, Walker filed a motion to withdraw as counsel, stating that she was unable to effectively communicate with Cooper in order to provide him with adequate representation.  As examples of this and other good cause for granting the motion, Walker listed:  (1) Cooper's regular and continual attempts to fire her via written correspondence "due to a delusional belief that [she was] against him"; (2) Dr. Norman's competency evaluation report, reflecting that

6

Cooper "has definite problems interacting with women"; (3) the psychiatric evaluation report by Dr. Dori Johnson, one of the North Texas State Hospital doctors, in which Cooper indicated that he had reservations about Walker's willingness and ability to handle his case effectively due to Walker being the same gender as his alleged victim; and (4) Cooper's violent and unpredictable acts while she represented him, to the extent that her ability to represent him was compromised and caused her concern for her safety—on two occasions, he sent correspondence to her office that was covered in his blood.

Walker attached a copy of Dr. Norman's competency evaluation and a copy of Dr. Johnson's psychiatric report to her motion. No other copies of these reports were included in the record. *Cf.* Tex. Code Crim. Proc. Ann. art. 46B.079 (Vernon Supp. 2010).

Dr. Norman's October 3, 2007 competency evaluation indicated that Cooper was not competent to stand trial, that Cooper suffered from bipolar disorder with psychosis and alcohol abuse, and that Cooper manifested evidence of a thought disorder, delusional thinking, and hallucinations. At one point, Dr. Norman noted, "I would like to point out that I believe that some of this gentleman's reported symptomology is manipulative, but without a doubt, he does suffer with an illness of psychotic proportion."

Dr. Johnson's evaluation, conducted mid-January 2008, indicated that Cooper had regained competency to stand trial. She reported that while confined to the mental hospital, Cooper received psychiatric treatment in the form of

7

psychotropic medications, psychosocial rehabilitation, and formal competency training. She also reported that Cooper appeared to be feigning or exaggerating some of his symptoms, providing specific examples:

- While Cooper consistently reported experiencing auditory and visual hallucinations, his accounts varied, and neither his treatment team nor unit staff ever observed him outwardly responding to internal stimuli.[2] Cooper's behavior throughout his stay on the competency unit was continuously exemplary and paradoxical with his behavior while meeting with his treatment team, as well as inconsistent with his reported symptoms of psychosis.

- Cooper told one of the nurses that he purposely performed poorly on a written competency test, stating, "I could have done better, but I'm not sure if it's a good idea." He told the nurse that he had heard from other patients that there was a way to stay at the hospital rather than doing jail time.

- There was no evidence of current memory, intellectual, or psychological impairment that would prevent Cooper from being able to assist in his defense if he chose to do so.

- Cooper demonstrated that he understood the four plea options: Guilty, not guilty, not guilty by reason of insanity, and no contest. He also demonstrated that he understood the concept of a plea bargain and that he would be the one to decide whether to accept one, as well as the rights that would be forfeited if he accepted a plea bargain.

- Dr. Johnson concluded that Cooper was a "less than perfect defendant," and would be difficult to work with because of his "attempts to avoid prosecution and be psychiatrically hospitalized."

---

[2]Doctor Johnson reported,

Overall, Mr. Cooper has been functioning in a way that is inconsistent with someone who is experiencing psychotic symptoms such as delusions and hallucinations. The only evidence that supports the idea that he is experiencing hallucinations is his own self-report, as the unit staff has never witnessed him exhibiting bizarre behavior or responding to internal stimuli.

8

Dr Johnson recommended that Cooper's defense attorney "should encourage him to be as forthcoming as possible with an emphasis on how this approach is beneficial to him and the possible negative consequences of exaggerating or feigning impairment." She also added that Cooper "is not expected to regress in psychological functioning, but it is possible that he will continue his attempts to feign or exaggerate psychological deficits."

### 2. Guilty Plea and Punishment Trial

Cooper's two-day trial began April 7, 2008. The trial court had the opportunity to evaluate Cooper's competence before trial in light of both competency reports and Walker's allegations in her motion to withdraw and by observing him during the plea admonishments.

During the admonishments, the trial court asked Cooper if he wanted to enter a plea of guilty to the charges against him, and Cooper said yes. James Winegardner, who was appointed as counsel when the trial court allowed Walker to withdraw, added, "Yes, Your Honor. It says there counts 1 and count 2. I believe that count 3 and 4 will be waived if we plead guilty to count[s] 1 and 2,"[3] and Cooper again said, "Yes." The trial court then explained count 1 of the indictment and asked Cooper if he understood. Cooper assented and stated that his plea was guilty. The trial court then explained count 2 of the indictment and

---

[3]The State filed a motion to dismiss counts 3 and 4 after Cooper's trial on counts 1 and 2, and the trial court entered an order to that effect.

9

asked Cooper if he understood.  Again, Cooper assented and stated that his plea was guilty.

Next, the trial court asked Cooper if he had gone over the enhancement and habitual paragraphs with Winegardner.  When Cooper said yes, the trial court proceeded to explain each paragraph, asking after each paragraph if Cooper understood.  Cooper said yes and pleaded true to each, although he added to habitual count 3 that he had pleaded guilty to the bodily-injury-to-a-child charge but that he was not actually guilty.  The trial court then explained that if Cooper decided to enter a plea of guilty before the jury, he would instruct the jury to find Cooper guilty.  Cooper said that he understood.

The trial court then asked Cooper if he was entering his guilty plea freely and voluntarily, and Cooper said yes.  Cooper said no when the trial court asked him whether anybody had forced him, coerced him, or made any promises to him to get him to enter that plea.  The trial court and Cooper then had the following conversation:

> THE COURT:  All right.  So are you entering a plea of guilty before the jury that's selected here because you are, in fact, guilty of that offense?
>
> DEFENDANT:  Yes, sir.
>
> THE COURT:  All right.  And for no other reason?
>
> DEFENDANT:  No, sir.
>
> THE COURT:  All right.  Now, I want to tell you this, too, that based upon your plea before me here to this enhancement paragraph and these habitual counts, that the punishment range for this offense

10

now is for—is by confinement in the Institutional Division of Texas Department of Criminal Justice for any—for life or for any term of not less than 25 years nor more than 99 years. Now, do you understand that range of punishment for the offense?

DEFENDANT: No, sir. Could you explain that to me again?

THE COURT: Sure. The range of punishment for the offense to which you pled guilty here—

DEFENDANT: Yes, sir.

THE COURT: —okay, based upon the fact that you have pled true to habitual enhancement paragraph 1 and habitual counts 1, 2 and 3, the range of punishment that is available for the jury to assess here against you is for life in the penitentiary or for any term of not less than 25 years nor more than 99 years. Okay? Do you understand that?

DEFENDANT: Yes, sir

THE COURT: The minimum is 99, the maximum is—pardon me. The minimum is 25 years and the maximum is 99 years or life.

DEFENDANT: Okay.

THE COURT: All right. Do you understand that?

DEFENDANT: Yes, sir.

THE COURT: All right. Now, knowing that that's the range of punishment for the offense, do you still want to plead guilty?

DEFENDANT: Yes, sir.

THE COURT: All right. Then, again, are you pleading guilty because of fear or threats or persuasion?

DEFENDANT: I want to plead, sir, yes, sir, I want to plead guilty.

THE COURT: Well, what I said was this, and, that is, are you pleading guilty because of fear or threats or persuasion?

11

DEFENDANT:  No, sir.

THE COURT:  Has anybody forced you to do that?

DEFENDANT:  No, sir.

THE COURT:  All right.  And you understand that you do have the right to plead not guilty?  Do you understand that fully?

DEFENDANT:  Yes, sir, yes, sir.

THE COURT:  You can plead not guilty.  Do you understand that?

DEFENDANT:  Yes, sir.  I-- I --

THE COURT:  All Right.  You -- understand that -- that right that you have, as an accused person, to plead not guilty?  Do you understand all that?

DEFENDANT:  Yes, sir.  I'm sorry.  I'm sorry, Judge.

THE COURT:  Okay.  But if you plead not guilty, then you understand that the State's lawyers would have to prove you guilty, they would have to bring in evidence here and present all the evidence to the jury?

DEFENDANT:  Yes, sir.  Yes, sir.  I -- I—I'm sorry.  I -- I – I'm very sorry.

THE COURT:  All right.

DEFENDANT:  I'm very sorry I hurt my wife.  She's the only thing I had.  I -- I love my wife, and I hope 12 people over there, I -- if I -- you can't tell me that I ain't, I loved her, and I'm so -- so sorry that I hurt her.

THE COURT:  All right.  Well, do you understand -- do you –

DEFENDANT:  I'm sorry, Judge.

THE COURT:  And now do you understand that this jury, if you -- with your pleading guilty, is going to decide what your punishment

12

is? Do you understand that I'm going to instruct them to find you guilty and decide your punishment? Do you understand that?

DEFENDANT: Yes, sir.

THE COURT: All right. And that, again, is that what you want to have happen here?

DEFENDANT: Yes, sir.

THE COURT: And you talked to your lawyers about all this, is that right?

DEFENDANT: Yes, sir.

THE COURT: And that's – that's what you have decided to do freely and voluntarily, is that correct?

DEFENDANT: Yes, sir.

THE COURT: All right. All right. Then I'll allow you to plead guilty before the jury and, of course, true to these enhancement and habitual counts.

After voir dire, Cooper made his pleas before the jury. Cooper called the prosecutor a liar as the prosecutor read the indictment, but he pleaded guilty to both counts without additional comment, and he pleaded true to the enhancement and habitual paragraphs.

At the end of the first day of trial, Winegardner informed the trial court that Cooper wanted the opportunity to go back to the state hospital for additional treatment. The trial court denied the request.

The trial court admonished Cooper several times not to talk during trial other than to whisper to his attorney. It also admonished Cooper about his right

13

not to testify. At the conclusion of trial, the trial court explained to Cooper that he would have a right of appeal.

### 3. Jury Charge and Judgments

The punishment charge states that Cooper had been charged by indictment in counts one and two with the offense of aggravated assault and

> [t]o this charge, the defendant has entered his plea of guilty. He has persisted in entering his plea of guilty, notwithstanding that the Court, as required by law, has admonished him of the consequences of such plea. *It plainly appearing to the Court that the defendant is mentally competent, and that he makes this plea freely and voluntarily, his plea is by this Court received.* [Emphasis added.]

Both judgments contain the following language: "It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument."

### C. Analysis

We cannot tell from the record the exact moment when the trial court determined that Cooper was competent to stand trial. However, both the punishment charge and the judgments reflect a finding by the trial court that Cooper was mentally competent to stand trial.[4] And the record reflects that the trial court had the opportunity to consider Cooper's competence before trial, that

---

[4]This is in direct contrast to the situation this court examined in *Bradford*, in which we noted that the record contained "no judgment, order, docket sheet entry, or other statement or evidence showing that the trial court made a determination" that the appellant had regained competency. 172 S.W.3d at 5. Because nothing in the record supported a conclusion that the appellant had regained competency, we remanded that case to the trial court for a retrospective judicial determination of competency. *Id.* at 6.

14

it thoroughly admonished Cooper before trial, and that it had the opportunity to evaluate Cooper's mental competence both before and during trial. Therefore, we conclude that the trial court made a determination of Cooper's competency before accepting Cooper's guilty pleas. *Schaffer*, 583 S.W.2d at 631; *cf.* Tex. Code Crim. Proc. Ann. art. 46B.004(b) ("If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial."); *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009) (stating that the standard of review for a competency determination is abuse of discretion because "those who observed the behavior of the defendant at the hearing were in a better position to determine whether []he was presently competent"). Therefore, we overrule Cooper's first two issues.

## IV. Ineffective Assistance of Counsel

In his third issue, Cooper argues that he received ineffective assistance of counsel when his trial counsel failed to examine his file prior to trial and then advised and allowed him to plead guilty while he was incompetent. Specifically, Cooper complains that he "acted strictly under the guidance and advice of the trial counsel. He pleaded guilty without an agreed recommendation as to punishment; under the effect of psychoactive medication prescribed by the evaluating psychiatrist, and having previously been found incompetent, without a standing adjudication declaring him competent to stand trial." Cooper asserts

that a perfunctory examination of his file would have revealed that there was a judgment of his incompetency and that he was on psychoactive medication.

## A. Standard of Review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at

16

813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

An appellant claiming ineffective assistance of counsel at trial must identify the allegedly erroneous acts and omissions of counsel. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. The appellate court then determines whether, in light of all the circumstances, these identified acts or omissions were outside the wide range of competent assistance. *Id.*

## B. Analysis

We initially note that, based on our resolution of Cooper's first two issues, Winegardner did not allow Cooper to plead guilty while he was incompetent.

Furthermore, we have seen nothing in the record to indicate that Winegardner failed to examine Cooper's file prior to trial. To the contrary, it appears from the record that Winegardner was aware of Cooper's mental health issues—real or feigned—starting with the motion to withdraw as counsel that he filed five days after he was appointed to represent Cooper, in which he stated

17

that he could not effectively communicate with Cooper so as to be able to adequately represent him and that Cooper refused to cooperate with him. And at the beginning of the defense's voir dire, Winegardner introduced the philosophy of punishment and asked, "How does, oh, mental illness play into the philosophy of punishment? Do you punish a mentally ill person the same way as anybody else or differently?" He led the venire panel through a discussion of their friends' and relatives' mental health treatments and behaviors when untreated. And he discussed remorse as a reason to plead guilty with the potential jurors. One of the venire panel asked, "[I]n . . . light of what you're saying that he's not all there, does the State have the . . . resources to put him in . . . in one of the hospitals?"

Therefore, on this record, we cannot say that Winegardner advised Cooper to plead guilty while incompetent or that he failed to examine Cooper's file prior to trial. *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. We overrule Cooper's third issue.

## V. Conclusion

Having overruled all of Cooper's issues, we affirm the trial court's judgment.

                                        BOB MCCOY
                                        JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  December 30, 2010



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-08-00136-CR

---

STEVEN WAYNE COOPER A/K/A STEVE COOPER

APPELLANT

V.

THE STATE OF TEXAS

STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## DISSENTING OPINION

----------

I respectfully dissent from the majority opinion because, as we have held repeatedly, the law requires a judicial determination of competence and the opportunity to object before proceeding with trial in order to overcome the presumption of incompetence to stand trial after a judicial determination of

incompetence.[1] We do not presume a judicial determination of competence. I would abate and remand as the law requires.[2]

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: December 30, 2010

---

[1] *See, e.g.*, *Bradford v. State*, 172 S.W.3d 1, 6 (Tex. App.—Fort Worth 2005, order) (abating and remanding to trial court for determination of competence), *disp. on merits*, No. 02-04-00414-CR, 2005 WL 1926409 (Tex. App.—Fort Worth Aug. 11, 2005, no pet.) (mem. op., not designated for publication); *see also* Tex. Code Crim. Proc. Ann. art. 46B.084 (Vernon Supp. 2010).

[2] *See Bradford*, 172 S.W.3d at 6.

2