

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00006-CR

MICHAEL DUANE HOLT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 12-0381X

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Michael Duane Holt suffers from mental retardation. After being indicted in this case for aggravated sexual assault of a child, Holt was evaluated by Dr. Thomas Allen, who found him incompetent to stand trial. As a result, the trial court sent Holt to a state hospital,[1] where Holt was treated, declared competent,[2] and returned for trial. After some delay following Holt's return to Harrison County, Allen evaluated Holt again and declared him competent, but with significant issues.[3] The trial court proceeded with trial, as a result of which Holt was convicted and sentenced

---

[1] Pursuant to Allen's initial report, the trial court made a finding that Holt was mentally incompetent to stand trial and committed him to the North Texas State Hospital, Vernon Campus, "for a period not to exceed 120 days for further examination and treatment toward the specific objective of attaining competency to stand trial."

[2] On May 14, 2013, the state hospital released Holt based on a report by Gloria Bell, Ph.D., indicating that Holt had attained competency to stand trial.

[3] By letter dated July 18, 2014, Allen informed the trial court, among other things, that Holt: (1) was aware he had an attorney, knew his attorney's name, and knew he was court appointed; (2) was rationally and factually aware that he was charged with sexual assault and knew what sexual assault meant; (3) was adequately aware of court proceedings and the roles of the courtroom participants; and (4) had an adequate capacity to understand the legal process. However, Allen also informed the trial court that Holt still had some difficulties understanding the proceedings and the resulting consequences, including that Holt: (5) did not understand what a jury was; (6) did not know he was the defendant; (7) could not discuss the function of a witness; (8) had a simple notion of evidence, what it meant, and its importance; (9) had no idea as to the make-up and function of the jury; (10) had no idea as to the standard of evidence required in a felony proceeding; (11) had a very limited understanding of what a "plea" was; (12) had no idea as to the consequences of entering a plea, either guilty or not guilty; (13) had no idea what rights he would be waiving on entering a guilty plea; (14) was not capable of understanding the concept of cross-examination; (15) did not know what a prosecutor was and did not understand why a prosecutor would want to question him in court; (16) had no idea what the judge might do if he entered a guilty plea; (17) had "no clue" what to discuss with his attorney regarding any plea aside from the punishment issue; (18) had an impaired capacity to appreciate the range and nature of possible penalties; (19) did not know what a prison was; (20) had no idea what type of sentence he might be given or where he would serve his sentence; (21) had an impaired capacity for appraising available legal defenses; and (22) could not verbalize any sort of defense to the charge. Allen noted that, whether Holt was able to "voluntarily and knowingly waive legal rights is highly questionable." Allen informed the court that Holt had a "C-Toni I.Q. of 54 (low range of [m]ild [m]ental [r]etardation)" and his "Global Assessment of Functioning (GAF) ratings were in the 45–50 range, which indicates severe impairment." Pursuant to this evaluation, Allen found that Holt's competency had been "restored." Holt's trial counsel was sent a copy of Allen's report. Notwithstanding what might appear to be evidence of Holt's continued incompetence to stand trial, Holt's trial counsel informed the trial court that he believed Holt was competent to waive his rights and enter a plea of guilty to the first-degree-felony offense of aggravated sexual assault of a child.

2

to twenty-five years' imprisonment. Holt's appeal claims that it was error for the trial court to proceed with trial without first making an explicit judicial determination that Holt had regained competency to stand trial.[4] For the reasons set out below, we affirm the trial court's judgment.

A defendant is presumed competent to stand trial and shall be found competent unless proven incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2006). A person is incompetent to stand trial if the person does not have "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (West 2006).

When a defendant has been found incompetent to stand trial, he or she may be committed to a state hospital for treatment. TEX. CODE CRIM. PROC. ANN. art. 46B.071(a)(1) (West Supp. 2014). If the defendant becomes competent to stand trial, the head of the facility must send a report to the committing court, with copies provided to both parties. TEX. CODE CRIM. PROC. ANN. art. 46B.079(b)(1)(c) (West Supp. 2014). When the defendant is returned to the trial court, the court shall make a determination of the defendant's competence to stand trial before resuming criminal proceedings. TEX. CODE CRIM. PROC. ANN. art. 46B.084(a) (West Supp. 2014). Unless the State or the defendant objects within fifteen days after the report is served, the court is authorized to make a determination[5] based solely on the medical report. *Id.* This determination

---

[4]Holt timely filed a motion for new trial addressing the issue that is now before us. The trial court denied the motion by its order of January 5, 2015.

[5]Holt does not contend that the trial court had insufficient evidence to determine that he had been restored to competency; the claim before us focuses on the timing and form of the finding. Trial courts have discretion to determine competency. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on*

3

may be evidenced by a recitation in a judgment, an order, a docket sheet entry, or any other evidence that the court made a determination of competency after the defendant returned from the state hospital. *Fuller v. State*, 11 S.W.3d 393, 395 (Tex. App.—Texarkana 2000, no pet.).

In this case, the hospital provided the trial court with the appropriate documentation purporting to show that Holt had been restored to competency. Neither the State nor Holt objected to the report. The trial court's October 28, 2014, judgment of conviction recites that, before proceeding to trial, "it appeared to the [c]ourt that [Holt] was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of [his] plea."[6]

---

*other grounds*, TEX. CODE CRIM. PROC. ANN. art. 46B.004(c-1) (West Supp. 2014), *as stated in Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013). A trial court has the opportunity to observe a defendant's behavior at the time and is, therefore, in a better position to determine whether he or she appeared to have the "present ability" to stand trial. *Id.* at 425.

[6]Approximately one month after Allen's later evaluation, the trial court called Holt's case for a hearing, and both Holt and the State announced they were ready to proceed. Holt waived a formal reading of the State's indictment. The trial court showed Holt a document entitled "Waiver of Trial by Jury" and asked him if the signature that appeared at the bottom of the document was his. Holt responded that it was. The trial court continued by asking Holt if he freely and voluntarily signed the document. Holt responded that he did. The trial court then asked, "When you signed that document[,] did you understand that you [were] giving up your right to a trial by jury on both guilt or innocence and punishment in this case?" Holt responded, "Yes, sir." The trial court then made a finding that Holt had waived a trial by jury and set the case for a bench trial.

On October 28, 2014, Holt appeared before the trial court to enter a guilty plea and proceed with the punishment phase of his trial. Before his plea, the trial court asked Holt if he had ever been treated for mental illness. Holt's counsel informed the trial court,

> Judge, he is mentally retarded and has had caregivers most of his life. We will get into that in the testimony. He was sent off to Vernon and found incompetent and was later found competent at Vernon after he had been there for several months. So he has been taking mental illness medications. He is mentally retarded.

The trial court continued by asking Holt (1) if he understood the charges against him; (2) if he understood the nature and consequences of the proceedings; (3) if he understood the roles of the people involved in the case, including his trial counsel, the district attorney, and the court; and (4) if he understood what "prosecuting" meant. Holt responded in the affirmative to all of the trial court's questions and gave the correct answers to questions requiring a slightly more detailed response. The trial court asked Holt's counsel if he believed Holt was competent to enter a plea, to which his counsel responded, "Judge, I have spent some time with Mr. Holt this morning with regard to the questions pertaining to what you just asked him as well and I think he is sufficiently competent to go forward." The trial court

4

Notwithstanding the trial court's finding of Holt's competence in the judgment of conviction, Holt contends the trial court erred when it accepted his waiver of a jury trial and when it proceeded with adjudicating his guilt without *first* making a judicial determination that he had regained competency to stand trial. We disagree.

In *Bell v. State*, appellant moved to quash the enhancement paragraphs of his indictment because, at the time of the prior convictions, he had previously been found incompetent and there had been no judicial determination of his competence after he returned from the hospital. *Bell v. State*, 814 S.W.2d 229, 230 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd). The court reviewed the prior convictions and found that the judgments in two of the cases contained a recital of competence. *Id.* at 233. The court concluded that the State could properly use the two convictions for enhancement because the use of the word "competent" in the judgment was sufficient to show that Bell had regained competency. *Id.*[7]

We agree that the statute requires the trial court to make a judicial determination of competency before resuming criminal proceedings, but not that the determination explicitly appear in the record before such resumption. TEX. CODE CRIM. PROC. ANN. art. 46B.084(d) (West Supp. 2015); *Schaffer v. State*, 583 S.W.2d 627, 630 (Tex. Crim. App. [Panel Op.] 1979). While the trial court's opinion of Holt's restoration of competency was noted in writing in the judgment of

---

then asked Holt, "[T]o the first degree felony offense of aggravated sexual assault of a child, sir, what is your plea, guilty or not guilty?" Holt responded, "[G]uilty." Following Holt's guilty plea, the State called its first witness, the victim, to testify in the punishment phase of the trial. Allen would be the final witness to testify before the trial court sentenced Holt to twenty-five years in prison.

[7]Four of the convictions could not be used against appellant because the judgments did not contain a recitation showing his competency had been restored. *Bell*, 814 S.W.2d at 233.

conviction, which was obviously entered after Holt waived his right to a jury trial, the recitation is clear that the finding was made before proceeding with the trial. It is noted that the trial court had the benefit of the "unobjected to" evaluation of competency and Allen's supplemental evaluation before the time Holt waived his right to a jury. Before Holt entered his guilty plea to the charged offense, the trial court had the benefit of the two evaluations and the added benefit of questioning Holt as to his competence. In addition, the trial court questioned Holt's trial counsel as to whether or not he believed Holt was competent to go forward with the guilty plea and the punishment phase of the proceedings. Holt's trial counsel indicated that he believed Holt was competent and understood the proceedings and its ramifications. All of that supports our holding.

The trial court had the opportunity to review Holt's competency evaluations and observe him during all of the proceedings following his return from the State hospital. As a result, the trial court was in the best position to determine whether Holt had the "present ability" to go forward with the criminal proceedings against him. While we are unable to tell from the record when the trial court actually made its determination that Holt was competent to stand trial, the judgment of conviction recites that the trial court, in fact, found him competent at some point before resuming the proceedings and made a judicial determination reflecting that finding. That complies with the law. *See Cooper v. State*, 333 S.W.3d 859 (Tex. App.—Ft. Worth 2010, pet. ref'd).

6

We overrule Holt's single point of error and affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     May 26, 2015
Date Decided:       June 18, 2015

Do Not Publish