

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00048-CR

———————————————

RODRIGO DERRAIL ERVIN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1821873

---

Before Birdwell, Bassel, and Walker
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Rodrigo Derrail Ervin appeals his conviction for felony escape. In a single issue, Ervin argues that he received ineffective assistance of counsel. Specifically, he asserts that his trial counsel was deficient "for failing to object to [the] contents of an exhibit containing descriptions of extraneous offenses" that Ervin had committed. Because Ervin has not shown that the complained-of deficiency prejudiced his defense, we affirm.

## I. BACKGROUND

In the summer of 2023, Ervin was on bond for a domestic-assault offense. Under the conditions of his release, he was required to have regular meetings with a probation officer. In preparation for the meeting scheduled for August 30, 2023, the probation officer checked to see if Ervin had any active warrants and discovered that he did, in fact, have an active arrest warrant. In accordance with standard protocol, the officer contacted the Tarrant County Sheriff's Deputies on duty that day. They confirmed the warrant and arrested Ervin, at which point he was no longer free to leave.

Deputy Christopher Carmichael escorted Ervin in handcuffs from the probation office to the holdover cell. Because Ervin had been cooperative up to that point, Deputy Carmichael allowed him to use his cellphone in the holdover cell after his pockets had been emptied and it had been confirmed that he had no weapons.

According to Deputy Carmichael, before he could retrieve Ervin's phone from him, Ervin got in a "football stance," rushed at him, knocked him over, and sprinted out the door. Deputy Carmichael clarified that Ervin was still under arrest at that point, did not have permission to leave, and would not be allowed to leave without an escort.

Surveillance footage showed Ervin sprinting to an employee-only exit and frantically yanking on the locked doors. Deputy Wayne Coston, who had been tasked with transporting Ervin to the jail, saw him "r[u]n by . . . in a full sprint" and immediately gave chase because "nobody runs or sprints in a building" unless "[s]omething's wrong." After shaking the locked doors, Ervin turned around and looked at Deputy Coston and then tried to make a "little move" to get around him before finally stopping and allowing himself to be handcuffed.

Ervin was indicted for two counts of felony escape.[1] *See* Tex. Pen. Code Ann. § 38.06(a), (c). The indictment included a habitual-offender notice alleging that Ervin had been convicted of two prior and sequential felonies, raising the punishment range for his offense to twenty-five to ninety-nine years or life in prison. *See id.* § 12.42(d). Ervin pleaded "not guilty," and a jury trial was held.

At trial, Ervin testified in his own defense. He explained that when he was in the holdover cell, he had been attempting to call the mother of his child so that she

---

[1]The State waived the second count at trial.

3

could call the bail bondsman, but the call kept dropping. He claimed that when he left the holdover cell, he had not been trying to escape; rather, he had merely been trying to get better cell reception. He also told the jury that although Deputy Carmichael had not told him that he could leave, he also had never told him that he was not free to leave. He flatly denied knocking over Deputy Carmichael and told the jury that Deputy Carmichael and Deputy Colston had both been lying when they testified about what had happened.

After considering all the evidence, the jury found Ervin guilty. At the start of the trial's punishment phase, Ervin pleaded "true" to the indictment's habitual-offender allegations. The jury assessed Ervin's punishment at twenty-five years in prison. The trial court sentenced Johnson accordingly. This appeal followed.

## II. DISCUSSION

In his sole appellate issue, Ervin contends that his trial counsel's performance was so deficient that it prejudiced his defense, denying him his rights to the effective assistance of counsel and a fair trial. We disagree.

### A. APPLICABLE LAW AND STANDARD OF REVIEW

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence both that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668,

4

687, 104 S. Ct. 2052, 2064 (1984); *Prine v. State*, 537 S.W.3d 113, 116 (Tex. Crim. App. 2017); *see Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). We need not address both parts of the *Strickland* test if the appellant makes an insufficient showing of one component. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

An appellant claiming ineffective assistance of counsel at trial must identify counsel's allegedly erroneous acts and omissions. *Id.* at 690, 104 S. Ct. at 2066; *Cooper v. State*, 333 S.W.3d 859, 867 (Tex. App.—Fort Worth 2010, pet. ref'd). The appellate court then determines whether, in light of all the circumstances, these identified acts or omissions were outside the wide range of what constitutes competent assistance. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *Cooper*, 333 S.W.3d at 867.

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all of the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). An attorney's isolated acts or omissions generally do not constitute deficient performance. *See, e.g., Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). However, an egregious error may satisfy both parts of the *Strickland* test on its own. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Our review

5

of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

Furthermore, the record must affirmatively demonstrate that the ineffective-assistance claim has merit. *Thompson*, 9 S.W.3d at 813. An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If, as here, trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

*Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show a reasonable probability that the proceeding would have turned out differently without the deficient performance. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A "reasonable probability" is a probability sufficient to undermine

confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. We must ultimately focus on examining the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*, 104 S. Ct. at 2069.

## B. RELEVANT BACKGROUND

At trial, the State called Tarrant County Probation Officer Stacy Franco as a witness and offered as an exhibit the Tarrant County Probation Office's "chronologicals" or "chronos" on Ervin.[2] Ervin's counsel stated that he had no objection to the chronologicals' admission, and they were admitted as State's Exhibit 25.

The State questioned Franco regarding certain bond violations committed by Ervin as reflected in State's Exhibit 25. When Franco began to discuss bond violations that occurred after the date of Ervin's alleged escape offense, his counsel objected, arguing that such violations were irrelevant. Outside the jury's presence, Ervin's trial counsel further explained his position:

---

[2]"A 'chronological' is a document comprised of computer entries made by supervising officers of anything of note occurring regarding a particular supervisee on community supervision." *Estrada v. State*, No. 07-21-00298-CR, 2023 WL 2065672, at *1 n.2 (Tex. App.—Amarillo Feb. 17, 2023, no pet.) (mem. op., not designated for publication).

> Well, Judge, . . . I should have looked at the document, because I didn't realize that they're including all this information that's subsequent to this offense.
>
> And the only thing I feel like I opened the door to was potentially anything -- his performance on pretrial on the date of and prior to. Not all this other stuff that they're getting into.

After listening to argument from both sides, the trial court pointed out to Ervin's counsel that "Ms. Franco [was] testifying from a document that was not objected to. It was admitted." Based on that fact, the trial court overruled Ervin's counsel's relevance objection. However, the trial court gave the jury a limiting instruction (1) that it could not consider any testimony regarding Ervin's other bad acts "for any purpose unless [it found] and believe[d] beyond a reasonable doubt that the defendant [had] committed such other bad acts, if any" and (2) that even then, it could consider such bad acts only "in determining the motive, opportunity, intent, preparation, plan, knowledge, identity of the defendant, absence of mistake, or lack of accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case and for no other purpose."

Once this instruction had been given, Franco explained that after Ervin was placed on bond for his current escape offense, he had been required to wear a GPS leg monitor. She testified that Ervin's records showed that he had committed a "strap violation"—i.e., had tampered with the strap that held the GPS monitor on his leg— in August 2024.

8

## C. ANALYSIS

Ervin argues that his trial counsel was deficient for failing to object to State's Exhibit 25 and that this failure prejudiced his defense because it allowed the State to elicit evidence of his August 2024 strap violation. But even if we were to assume that Ervin's trial counsel acted unreasonably by failing to object, Ervin cannot satisfy his burden to show a reasonable probability that the proceeding would have turned out differently without the deficient performance. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308.

First, as noted, the trial court gave the jurors a limiting instruction regarding the extraneous-offense evidence, and absent evidence to the contrary, we must presume that they followed it. *Gadsden v. State*, No. 02-21-00195-CR, 2023 WL 2607559, at *5 (Tex. App.—Fort Worth March 23, 2023, no pet.) (mem. op., not designated for publication) (citing *Williams v. State*, No. 02-18-00382-CR, 2019 WL 2223214, at *3 (Tex. App.—Fort Worth May 23, 2019, no pet.) (mem. op., not designated for publication)); *Walker v. State*, 300 S.W.3d 836, 850 (Tex. App.—Fort Worth 2009, pet. ref'd). This limiting instruction significantly reduced the risk that the jury would misuse the extraneous-offense evidence and therefore minimized its prejudicial impact. *See Miller v. State*, 196 S.W.3d 256, 268 (Tex. App.—Fort Worth 2006, pet. ref'd); *Simpson v. State*, 886 S.W.2d 449, 452 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Plante v. State*, 692 S.W.2d 487, 494 (Tex. Crim. App. 1985)

9

(explaining that the trial court's limiting instruction "reduced the risk that the jury would misuse the evidence").

Second, as Ervin acknowledges in his brief, the State presented substantial evidence of his guilt. Not only did two eyewitnesses testify regarding Ervin's attempted escape from custody, the jury also saw the surveillance footage showing him sprinting to the employee-only exit and frantically shaking the locked doors. Given the ample evidence of Ervin's guilt, we conclude that he has failed to show that the outcome of his trial probably would have been different but for his trial counsel's purportedly deficient performance. *See Samarripas v. State*, 438 S.W.3d 673, 676 (Tex. App.—San Antonio 2014, no pet.); *see also Adekeye v. State*, 437 S.W.3d 62, 73 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (finding no prejudice for purposes of ineffective assistance based on stipulation informing jury of appellant's prior felony conviction for aggravated robbery when evidence of appellant's guilt for alleged offenses of aggravated robbery and felon-in-possession was overwhelming); *Hall v. State*, No. 02-09-00213-CR, 2010 WL 4570035, at *5 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) (holding that even if appellant's trial attorneys provided ineffective assistance when they elicited testimony from the complainant regarding the existence of other victims, *Strickland*'s prejudice prong was not satisfied because, inter alia, "[t]he State [had] presented overwhelming evidence of [appellant's] guilt").

Finally, Ervin himself chose to testify about his character and intent. Generally, except for prior convictions admitted under Rule of Evidence 609, extraneous-offense evidence is not admissible to impeach a testifying defendant. *See* Tex. R. Evid. 608(b); *see also* Tex. R. Evid. 609. But a defendant can "open the door" by leaving a false impression with the jury about a relevant act or character trait, and in such instances, evidence of an extraneous act that tends to rebut the false impression may be admissible to impeach the defendant. *Rivera v. State*, 233 S.W.3d 403, 406 (Tex. App.—Waco 2007, pet. ref'd) (citing *Daggett v. State*, 187 S.W.3d 444, 452–53 (Tex. Crim. App. 2005)). Further, evidence of a "crime, wrong, or other act" may be admissible to prove intent. Tex. R. Evid. 404(b). Here, Ervin took the stand in an attempt to convince the jury that he did not intend to commit the alleged escape offense. He also attempted to establish himself as a model pretrial probationer by accusing Franco of lying about his myriad bond violations. By putting his intent at issue and by attempting to establish himself as a model probationer, Ervin opened the door for the State to cross-examine him regarding the bond violations reflected in State's Exhibit 25, including the August 2024 strap violation.

In light of the foregoing, we conclude that Ervin has failed to satisfy *Strickland*'s prejudice prong. *See* 466 U.S. at 694, 104 S. Ct. at 2068. Accordingly, we overrule his sole issue.

## III.  CONCLUSION

Having overruled Ervin's sole issue, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 26, 2025