

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-23-00143-CR

_____

GARRY PAUL RENCH, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR15655

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Garry Paul Rench appeals his conviction for aggravated assault with a deadly weapon. In four issues, Rench argues that (1) the evidence was legally insufficient to support his conviction, (2) the trial court erred by admitting a body-camera video depicting hearsay statements made by the victim, (3) he received ineffective assistance of counsel, and (4) his seventy-year prison sentence is grossly disproportionate to his offense and therefore constitutes cruel and unusual punishment. We affirm.

## II. BACKGROUND

In June 2022, Deputy Daniel Martin of the Hood County Sheriff's Office responded to a call regarding a domestic assault. Martin contacted the victim, Morgan Wilson, who stated that Rench, her boyfriend, had assaulted her with a baseball bat. According to Martin, Wilson appeared "panicky" and "distressed," and she had injuries that were consistent with having been struck by a baseball bat, including bruises on the left side of her body and a "really large knot on her head."

Several days after the incident, Wilson went to the sheriff's office to turn in a witness statement. While taking her statement, Investigator Cory Cook noticed Wilson's severe bruising. Cook took photos of Wilson's injuries and observed that they were consistent with her having been hit by a baseball bat.

2

In September 2022, Rench was indicted for aggravated assault with a deadly weapon, a second-degree felony. *See* Tex. Penal Code Ann. § 22.02(a)–(b). The indictment also alleged that Rench had a prior felony conviction for the unlawful possession of body armor by a felon, enhancing the punishment range for his charged offense to that for a first-degree felony. *See id.* § 12.42(b). In May 2023, the State filed a notice of its intent to further enhance Rench's punishment range to that for a habitual offender—twenty-five to ninety-nine years or life in prison—because he had a second prior felony conviction. *See id.* § 12.42(d).

Rench pleaded not guilty, and a jury trial was held. After hearing all of the evidence, including the testimony of Wilson, Martin, Cook, and Investigator Kevin Sklark, the jury found Rench guilty. Following a punishment hearing, the jury assessed Rench's punishment at seventy years' imprisonment, and the trial court sentenced him accordingly. This appeal followed.

## III. DISCUSSION

On appeal, Rench raises four issues. For the reasons set forth below, all of these issues are either meritless or unpreserved.

### A. The Evidence Was Legally Sufficient To Support Rench's Conviction

In his first issue, Rench argues that the evidence was legally insufficient to support his conviction. Specifically, he contends that there was insufficient evidence to show that he used or exhibited a deadly weapon during the commission of the assault. We disagree.

3

### 1. Standard of Review and Applicable Law

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 392, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

### 2. Application

The indictment alleged that Rench "intentionally or knowingly cause[d]" bodily injury to Wilson "by hitting her" and that he "use[d] or exhibit[ed] a deadly weapon"—a baseball bat—during the commission of the assault. *See* Tex. Penal Code Ann. § 22.02(a)(2). Thus, a hypothetically correct jury charge would require the State to prove beyond a reasonable doubt that Rench (1) intentionally or knowingly caused

5

bodily injury to Wilson (2) by hitting her and (3) used or exhibited a baseball bat in a manner capable of causing death or serious bodily injury during the commission of the assault. *See Hammack*, 622 S.W.3d at 914; *Curlee*, 620 S.W.3d at 778; *see also* Tex. Penal Code Ann. § 1.07(a)(17)(B) (defining "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury").

According to Rench, the evidence was insufficient to support the jury's deadly-weapon finding[1] because no bat was ever recovered or introduced into evidence and because there was no medical evidence showing that Wilson's injuries were life-threatening since she never went to the hospital for treatment. However, "[a] rational jury may find the use or exhibition of a deadly weapon beyond a reasonable doubt even when the weapon was never located and is not in evidence." *Burgos v. State*, No. 12-22-00230-CR, 2023 WL 4307658, at *3 (Tex. App.—Tyler June 30, 2023, no pet.) (mem. op., not designated for publication); *see Gomez v. State*, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985) (holding evidence legally sufficient to prove use of firearm without recovery of weapon based solely on complainant's description); *Jarnagin v. State*, No. 01-09-00753-CR, 2010 WL 5186782, at *4 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, pet. ref'd) (mem. op., not designated for publication)

---

[1]As noted above, Rench specifically argues that the State failed to prove that he used a deadly weapon; he does not complain about the sufficiency of the evidence to support any other element of the offense. Thus, we will limit our evidentiary-sufficiency analysis to the jury's deadly-weapon finding. *See* Tex. R. App. P. 47.1.

6

(holding evidence legally sufficient to prove that assailant used baseball bat as deadly weapon even though the bat was never found because victim testified that assailant used baseball bat and police opined facial fractures were consistent with use of deadly weapon). Moreover, the fact that Wilson did not seek medical treatment does not minimize the extent of her injuries or foreclose a determination that Rench used a bat as a deadly weapon during the assault. *See Johnson v. State*, No. 05-21-00340-CR, 2022 WL 1420980, at *3 (Tex. App.—Dallas May 5, 2022, no pet.) (mem. op., not designated for publication). Indeed, while a victim's injuries are factors in determining whether an object qualifies as a deadly weapon, *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004), the State is not required to show that an object actually caused serious bodily injury to prove that it was used as a deadly weapon, *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017).

Here, the record contains ample evidence to support the jury's deadly-weapon finding. Wilson testified that Rench hit her with a baseball bat and that she feared for her life during the attack. The jury was shown pictures of Wilson's injuries, and Martin and Cook both testified that these injuries were consistent with being hit with a baseball bat. Further, Martin, Cook, and Sklark all testified that a baseball bat can be a deadly weapon, particularly when used to inflict injuries like the ones Wilson sustained.

Considering this evidence in its totality and viewing it in the light most favorable to the verdict, we conclude that a factfinder could reasonably infer that

Rench used a baseball bat in a manner capable of inflicting serious bodily injury or death to assault Wilson. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Accordingly, we overrule Rench's first issue.

## B. The Trial Court Did Not Err by Admitting the Body-Camera Video

In his second issue, Rench asserts that the trial court abused its discretion by admitting State's Exhibit Three—a video recording from Martin's body camera showing his interactions with Wilson shortly after the assault occurred. Rench objected to the video's admission on hearsay grounds because it depicts Wilson's out-of-court statements to Martin describing the assault. *See* Tex. R. Evid. 801, 802. But the State argued that Wilson's statements fell within a number of hearsay exceptions, including the excited utterance exception, and the trial court ultimately admitted the video. *See* Tex. R. Evid. 803(2). Rench contends that the excited utterance exception does not apply and that, therefore, the trial court erred by admitting the video. We disagree.

### 1. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only

when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

Even if a trial court improperly admits evidence, such an error generally does not warrant reversal unless it affects an appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Improperly admitted evidence that did not influence the jury or had but a slight effect on the verdict is harmless. *Id.* Further, a trial court's error in improperly admitting evidence may be rendered harmless if other evidence that proves the same facts as the inadmissible evidence is admitted without objection. *See Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003).

### 2. The Excited Utterance Exception

Rule 803(2) provides that a statement is not excluded by the hearsay rule if it is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement that it caused." Tex. R. Evid. 803(2). For this exception to apply, (1) the statement must be the product of a startling event, (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the event, and (3) the statement must be related to the circumstances of the startling event. *White v. State*, 201 S.W.3d 233, 245 (Tex. App.—Fort Worth 2006, pet. ref'd) (citing *Couchman v. State*, 3 S.W.3d 155, 159 (Tex. App.—Fort Worth 1999, pet. ref'd));

9

*see Coble*, 330 S.W.3d at 294. "The critical determination in regard to the excited utterance exception is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time he or she made the statement." *Amador v. State*, 376 S.W.3d 339, 344 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *Tyler v. State*, 167 S.W.3d 550, 555 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)); *accord White*, 201 S.W.3d at 245 (quoting *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001)).

### 3. Application

The trial court did not abuse its discretion by admitting the body-camera video under the excited utterance exception to the hearsay rule. *See* Tex. R. Evid. 803(2). Rench contends that Wilson's statements describing the assault were not sufficiently related to the circumstances of the startling event to satisfy the excited utterance exception's third element. *See White*, 201 S.W.3d at 245. But because the assault was the startling event, Rench's argument defies both logic and common sense. Indeed, assault victims' out-of-court statements to responding officers describing what happened to them are routinely admitted under the excited utterance exception. *See, e.g.*, *Reagan v. State*, No. 2-03-050-CR, 2003 WL 22966260, at *2–3 (Tex. App.—Fort Worth Dec. 18, 2003, no pet.) (mem. op., not designated for publication) (holding that police officer's testimony regarding assault victim's out-of-court statements describing the assault was admissible under the excited utterance exception because, *inter alia*, the victim's statements "were related to the startling occurrence of the

10

assault"); *Moon v. State*, 44 S.W.3d 589, 594 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding that trial court did not abuse its discretion by admitting hearsay testimony under excited utterance exception when victim told testifying officer that her husband "beat her" and "had thrown her off the couch and drug her through the house"). Martin testified that Wilson appeared "distressed," "panicky," "nervous," and "scared" during his initial interactions with her. Thus, the trial court could have reasonably determined that she "was still dominated by the emotions, excitement, fear, or pain" caused by the assault at the time she made the statements depicted on the body-camera video and that, therefore, the excited utterance exception applied. *See Amador*, 376 S.W.3d at 344.

Further, Wilson's statements on the body-camera video correspond to her trial testimony describing the assault. Therefore, even if the statements made in the video constituted inadmissible hearsay, the same facts were established by other properly admitted evidence. Because error in the admission of evidence is cured when the same evidence is admitted elsewhere without objection, *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984), Rench was not harmed by the error, if any, in admitting Wilson's video-recorded statements, *see Valle*, 109 S.W.3d at 509–10.

We overrule Rench's second issue.

## C. Rench Has Not Shown That His Trial Counsel Was Ineffective

In his third issue, Rench argues that he received ineffective assistance of counsel. This argument lacks merit.

11

## 1. Standard of Review and Applicable Law

To establish ineffective assistance, an appellant must prove by a preponderance of the evidence both that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Prine v. State*, 537 S.W.3d 113, 116 (Tex. Crim. App. 2017); *see Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). We need not address both parts of the *Strickland* test if the appellant makes an insufficient showing of one component. 466 U.S. at 697, 104 S. Ct. at 2069.

An appellant claiming ineffective assistance of counsel at trial must identify counsel's allegedly erroneous acts and omissions. *Id.* at 690, 104 S. Ct. at 2066; *Cooper v. State*, 333 S.W.3d 859, 867 (Tex. App.—Fort Worth 2010, pet. ref'd). The appellate court then determines whether, in light of all the circumstances, these identified acts or omissions were outside the wide range of what constitutes competent assistance. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *Cooper*, 333 S.W.3d at 867. An attorney's isolated acts or omissions generally do not constitute deficient performance. *See, e.g.*, *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). However, an egregious error may satisfy both parts of the *Strickland* test on its own. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

Furthermore, the record must affirmatively demonstrate that the ineffective-assistance claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). An appellate court may not infer ineffective assistance simply from an unclear

12

record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If, as here, trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

"Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" *McCoy v. Louisiana*, 584 U.S. 414, 422, 138 S. Ct. 1500, 1508 (2018) (quoting *Gonzalez v. United States*, 553 U.S. 242, 248, 128 S. Ct. 1765, 1769 (2008)). Generally, a record devoid of counsel's reasoning behind a particular decision—including failure to object to or proffer evidence—will not show deficient performance. *See Prine*, 537 S.W.3d at 117; *Lopez*, 343 S.W.3d at 143–44.

## 2. Application

Rench asserts that his trial counsel was ineffective because "[h]e met with [Rench] only twice before trial and conducted minimal trial preparation" and "failed to investigate [Rench's] mental health history." But in his briefing, Rench does not establish—or even address—how additional trial preparation would have benefitted him or led to a better trial result. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068 (requiring defendant to show that there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different); *Johnston v. State*, 959 S.W.2d 230, 235 (Tex. App.—Dallas 1997, no pet.) (same). Similarly, Rench points to nothing in the record to explain how his trial counsel's supposed failure to investigate his mental health history prejudiced his defense; instead, he merely states in conclusory fashion that "evidence of [his] mental illness could have changed the outcome" of the trial. Rench does not provide any details concerning his mental health history or explain how, if presented, evidence of this history would have changed the result of the proceedings. *See Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("A claim for ineffective assistance based on trial counsel's general failure to investigate the facts of the case fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case." (citing *Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007))). Therefore, even if we were to assume—without deciding—that Rench's trial counsel was deficient based on his alleged failure to adequately prepare for trial or

to investigate and present evidence of Rench's mental health history, Rench would not be entitled to relief because he cannot satisfy the prejudice prong of the *Strickland* test. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We overrule Rench's third issue.

## D. Rench Failed to Preserve His Grossly-Disproportionate-Sentence Issue

In his fourth issue, Rench argues that his seventy-year prison sentence is grossly disproportionate to his offense and therefore constitutes cruel and unusual punishment under the Eighth Amendment. *See* U.S. Const. amend. VIII. However, this complaint is both unpreserved and meritless.

"It is well settled that almost every right, constitutional and statutory, may be waived by the failure to object." *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986). To preserve a complaint for appellate review, the record must show that the appellant presented a timely request, objection, or motion to the trial court stating the specific grounds for the ruling desired. Tex. R. App. P. 33.1(a); *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009). This rule holds true for a complaint that a sentence is grossly disproportionate. *Russell v. State*, 341 S.W.3d 526, 527–28 (Tex. App.—Fort Worth 2011, no pet.); *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd); *see also Fahmawi v. State*, No. 02-16-00325-CR, 2017 WL 3081217, at *1 (Tex. App.—Fort Worth July 20, 2017, no pet.) (mem op., not designated for publication) ("We have consistently held that [a disproportionate-sentence] complaint must be preserved for appellate review by first raising it in the

trial court via a timely request, objection, or motion."). Because Rench did not object when the trial court sentenced him or file a motion for new trial raising his disproportionality argument,[2] he has forfeited this issue for appellate review. *See Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986) ("As a general rule, an appellant may not assert error pertaining to his sentence or punishment where he failed to object or otherwise raise such error in the trial court.").

Even if the issue had been preserved, we still must overrule Rench's disproportionality argument on the merits. When, as here, the assessed punishment is within the statutory limits, it is generally not subject to a challenge for excessiveness. *Kim*, 283 S.W.3d at 475 (citing *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.)). Indeed, in assessing Rench's sentence, the trial court had "essentially 'unfettered'" discretion to impose any sentence within the prescribed statutory range. *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (quoting *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990)). Subject only to a very limited and "exceedingly rare" gross-disproportionality review, a punishment that falls within the legislatively prescribed range and that is based upon the sentencer's informed normative judgment is "unassailable" on appeal. *Id.* at 323–24.

---

[2]Rench filed a motion for new trial, but it merely recited in vague fashion that both the verdict and sentence were "contrary to the law and the evidence." In the motion, Rench did not reference the Eighth Amendment, much less argue that his sentence is grossly disproportionate to his offense.

16

We see nothing in the appellate record that would warrant the "exceedingly rare" reversal of a sentence falling within the statutory limits. *Id.*

We overrule Rench's fourth issue.

## IV. CONCLUSION

Having overruled all of Rench's issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 8, 2024