

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00204-CR
No. 02-24-00205-CR

_____

HOMER DAVID KINES, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court Nos. DC78-CR2019-0720, DC78-CR2019-0721

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

A jury found sixty-year-old Appellant Homer David Kines guilty of one count of aggravated assault with a deadly weapon and one count of unlawful possession of a firearm by a felon and—after Kines's plea of "true" to the State's enhancement allegations of two prior and sequential felony convictions—assessed his punishment, respectively, at eighty years' and ninety-nine years' confinement. *See* Tex. Penal Code Ann. §§ 22.02(a)(2), 46.04(a)(2); *see also id.* § 12.42(d) (setting out enhanced punishment of twenty-five to ninety-nine years or life). The trial court sentenced him accordingly.

In a single issue, Kines complains that he was denied due process because the trial court failed to properly assess his competency to stand trial. The State responds that the trial court found Kines competent to stand trial after both a psychologist's evaluation and a first-hand assessment of his competency before trial and that Kines's remaining arguments are unpreserved. Because the record does not reflect that the trial court failed to properly assess Kines's competency to stand trial, we overrule his sole issue and affirm the trial court's judgments.

## II. BACKGROUND

On October 21, 2019, the Wichita Falls Faith Mission's outdoor security cameras recorded a brief but violent altercation between Kines, who was homeless and staying at the Mission, and two teenagers, a male and a female. The security

2

footage showed the teenagers speak with another man and Kines before the teenagers turned and walked away a minute later. When the female teenager turned back and said something,[1] Kines raced after both.

When Kines caught up with them, he hit the female teenager in the face with a gun before pointing the gun at the male teenager and then walking away. A patrol car's dashboard camera recorded Kines's admission that he had hit the female teenager in the face and his assertion that the teenagers had been "messing with the homeless people" and threatening him. Eight days later, Kines stated in a recorded jail conversation that he had pulled the gun on one of the teenagers and had struck the other because he believed at the time that they were "gang-bangers,"[2] and he later showed the police where he had discarded his loaded .25-caliber handgun.

After the incident, a grand jury issued a three-count indictment. The first count, which alleged that Kines had committed aggravated assault with a deadly weapon by striking a juvenile on or about the face with a firearm, was dismissed when that complainant did not appear at trial. The remaining counts alleged that Kines had committed aggravated assault with a deadly weapon by pointing a firearm at Jahlian

---

[1]The security footage had no audio.

[2]The deputy chief investigator for the Wichita County District Attorney's Office testified that a "gang[-]banger" is a slang term for someone "affiliated with a street gang" and who can be dangerous, violent, and involved in crime.

3

Tate,[3] *see id.* § 22.02(a)(2), and that Kines had committed unlawful possession of a firearm by a felon by possessing a firearm at a location other than the premises where he lived after the fifth anniversary of his release from incarceration for a March 8, 2013 felony conviction. *See id.* § 46.04(a)(2).

In December 2021, the trial court found Kines incompetent to stand trial. In March 2024, before trial began, the trial court found that Kines had regained competency.

## III. DISCUSSION

Kines argues that the trial court did not properly assess his competency to stand trial because it failed to follow the Code of Criminal Procedure's timeline.

## A. Standard of review and applicable law

If a defendant is tried and convicted and later found to have been incompetent to stand trial, that trial is rendered invalid on due-process grounds. *Turner v. State*, 570 S.W.3d 250, 262 (Tex. Crim. App. 2018). The Legislature has codified the constitutional standard for competency to stand trial by setting forth a substantive and procedural framework for making competency determinations to ensure that legally incompetent criminal defendants do not stand trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018) (citing Tex. Code Crim. Proc. Ann. arts. 46B.003–.005).

---

[3]At trial, Tate, who had been nineteen years old at the time of the altercation, denied that he and his companion had threatened Kines and testified that he did not know what his companion had said that caused Kines's reaction.

4

Under Code of Criminal Procedure Article 46B.003, a person is incompetent to stand trial if he or she "does not have (1) sufficient present ability to consult with [his or her] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him or her]." Tex. Code Crim. Proc. Ann. art. 46B.003(a). Article 46B.003 "specifies the defendant's *present* ability." *Montoya v. State*, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009), *superseded by statute on other grounds as stated in Turner v. State*, 422 S.W.3d 676, 692 & n.31 (Tex. Crim. App. 2013). Once a person is found to be incompetent, he is presumed to remain incompetent "until such time as it has been determined in accordance with the law that he is competent to stand trial." *Schaffer v. State*, 583 S.W.2d 627, 630 (Tex. Crim. App. 1979).

A defendant's competency to stand trial is a question of fact to be determined by the appropriate factfinder. *Turner*, 570 S.W.3d at 262. We review competency-determination questions for an abuse of discretion and do not substitute our judgment for that of the trial court. *Timmons v. State*, 510 S.W.3d 713, 718 (Tex. App.—El Paso 2016, no pet.). Instead, we determine—viewing the evidence in the light most favorable to the ruling, and assuming that all reasonable factfindings in support of the ruling have been made—whether the trial court's decision was arbitrary or unreasonable, i.e., whether the trial court acted without reference to any guiding rules or principles. *Id.* "We cannot ignore the trial court's first-hand factual

5

assessment of [the] appellant's mental competency." *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003).

Additionally, the record must contain a judgment, order, docket entry, or other evidence that the trial court actually made a competency determination. *Cooper v. State*, 333 S.W.3d 859, 862 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *Schaffer*, 583 S.W.2d at 631).[4] The law requires a judicial determination that a defendant who has been adjudged incompetent and has been found criminally committed has regained competency before criminal proceedings may be resumed. *Bradford v. State*, 172 S.W.3d 1, 2 (Tex. App.—Fort Worth 2005, no pet.).[5] The filing of a report from

---

[4]In *Schaffer*, the state hospital's final competency report was contained in the appellate record without a file mark, there was nothing to show that copies of the report were furnished or served on the parties so that objections could be raised, and there was nothing in the record to show that the trial court ever made a competency determination after the appellant's return from the state hospital. 583 S.W.2d at 630. Under an earlier version of the same statutes at issue here, the Court of Criminal Appeals reversed the trial court's judgment. *Id.* On rehearing, the State supplied a supplemental transcript showing that the state hospital's final report had a file mark and had been filed as required by statute and that a copy had been furnished to defense counsel but had been erroneously omitted from the original record. *Id.* at 631. The record nonetheless still lacked a judicial determination of the appellant's competence to stand trial, and the court abated the appeal so that the trial court could make a retrospective judicial determination on the record. *Id.* ("What may be obvious to the State is lacking in the record.").

[5]In *Bradford*, after the psychiatrist sent a report that the defendant was competent, the trial court held a hearing on the State's petition to adjudicate guilt, adjudicated the defendant guilty, and sentenced her—all without making a judicial determination that the defendant had regained competency at the time of the hearing on the State's petition. 172 S.W.3d at 3. We abated the appeal for the trial court to make a judicial determination of the defendant's competency at the time of the adjudication hearing. *Id.* at 6; *see Turner*, 570 S.W.3d at 262 (stating that if a trial court

6

the head of a mental health facility does not obviate the need for a judicial determination of the defendant's competency to stand trial because reports containing competency recitations are evidentiary only—they cannot operate as a substitute for a judicial factfinding of a defendant's competency to stand trial. *Id.* at 5.

The record here contains both evidence and judgments showing that the trial court made a competency determination before trial. Kines's complaint is that the trial court's failure to adhere to the relevant statutory timeline calls into question whether he was competent at the time of the trial.

## B. The record

### 1. Kines's 2022 incompetency finding

In October 2021, Kines's appointed counsel at the time—Reginald Wilson[6]—moved for a competency exam.[7] *See* Tex. Code Crim. Proc. Ann. art. 46B.004(a)

---

fails to conduct a competency hearing, the remedy is to abate the appeal and to remand for the trial court to conduct a retrospective competency trial if one is feasible).

[6]During the case, Kines had three appointed trial counsel and three appointed appellate counsel, but only the first withdrawal directly involved Kines. The day after the October 2019 altercation, the trial court appointed the public defender's office to represent Kines. A year and a half later, the public defender's office moved to withdraw, alleging that counsel and Kines could not effectively communicate. In April 2021, after a hearing that was not recorded, the trial court allowed the withdrawal and appointed Wilson. Wilson withdrew in June 2023 after accepting new employment, and the trial court substituted Lee Ann Marsh, who represented Kines through trial. Kines's first appellate counsel withdrew based on his heavy caseload, and the second withdrew because he was no longer on the appointment list.

("Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial."). The hearing was not recorded, but the trial court granted the motion and appointed Dr. Stacey Shipley to examine Kines and to provide a written report. *See id.* art. 46B.005(a) ("If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination . . . to determine whether the defendant is incompetent to stand trial in a criminal case.").

On January 20, 2022, the trial court signed an agreed judgment of incompetency, reflecting that both parties had reviewed Dr. Shipley's report and agreed with her opinion that Kines was incompetent to stand trial. *See id.* art. 46B.054 (stating that if the trial court finds that evidence exists to support the incompetency finding and "the court and the counsel for each party agree that the defendant is incompetent to stand trial, [then] the court shall proceed in the same manner as if a jury had been impaneled and had found the defendant incompetent to stand trial"). The trial court found Kines incompetent to stand trial because of mental illness and ordered his commitment to North Texas State Hospital (NTSH) to restore his competency. *See id.* art. 46B.071(a)(2)(B) (stating that upon an incompetency determination, if the defendant is charged with a Class-A misdemeanor offense or higher, the trial court shall "commit the defendant to a facility or a jail-based

---

[7]Wilson's billing records reflect that he filed the motion the day after he attended his first pretrial conference with Kines.

8

competency restoration program under Article 46B.073(c) or (d)"); *see also id.* art. 46B.073(b)(2) (addressing commitment for restoration to competency to stand trial).

### 2. 2023 competency notification

In a faxed December 21, 2023 letter, the NTSH superintendent informed the trial court that Kines had attained competency to stand trial.[8] *See id.* art. 46B.079(b)(2) (requiring the competency-restoration-program provider to promptly notify the trial court when it believes the defendant has attained competency to stand trial).

Enclosed with NTSH's letter was a trial competency evaluation report submitted by Dr. Elizabeth M. Mutinda. In her report, Dr. Mutinda stated that (1) she had interviewed and evaluated Kines to assess his competency and found him "cooperative and engaged"; (2) she had reviewed Dr. Shipley's report and Kines's medical records at the hospital, including his psychiatric evaluation at the time of admission, reports of his progress, and descriptions of his current behavior; (3) Kines had received psychiatric treatment, including "formal competency training," and psychotropic medications; and (4) she had concluded within a "reasonable degree of psychological certainty" that he was competent to stand trial because he had a sufficient ability to consult with counsel with a reasonable degree of rational understanding of his pending charges, had a factual and rational understanding of the charges against him and the trial court proceedings, and had the capacity to participate

---

[8]According to Marsh's billing records, she also received a letter from NTSH on December 21, 2023.

meaningfully in preparing for his defense. *See id.* art. 46B.003(a) (reciting competency standard).

The next day—December 22, 2023—the trial court emailed the parties about the letter, forwarded the report to them, and set a status hearing for January 12, 2024. *See id.* art. 46B.079(c) (requiring the trial court to provide to the parties' attorneys "copies of a report based on notice under this article . . . to enable any objection to the findings of the report to be made in a timely manner as required under Article 46B.084(a-1)"). The court coordinator's email to the parties' counsel stated, "Please see the attached report on Mr. Kines. I will have him added back to the docket for settings." Neither party objected to the findings in Dr. Mutinda's report. *Cf. id.* art. 46B.084(a-1)(1) (stating that a party may object in writing or in open court to the findings "not later than the 15th day after the date on which the court received the applicable notice under Article 46B.079").

On January 3, 2024, Kines was returned from NTSH to the custody of the Wichita County Sheriff's Office. *See id.* art. 46B.084(a)(2). Under Article 46B.084(a)(2), in a county with a population of less than 1.2 million, the trial court shall notify the parties' attorneys "as soon as practicable following the date of the defendant's return to the court," and the defendant's attorney "shall meet and confer with the defendant *as soon as practicable* after the date of receipt of that notice." *Id.*

(emphasis added). At Kines's implicit request,[9] we take judicial notice that Wichita County's population at the time of the notice was under 1.2 million. *See* Tex. R. Evid. 201(b)(2), (c)(1)–(2), (d). Accordingly, under Article 46B.084(a)(2), Kines's counsel's "meet-and-confer" requirement was to do so "as soon as practicable." *See* Tex. Code Crim. Proc. Ann. art. 46B.084(a)(2). Further, based on Wichita County's population size, under Article 46B.084(a-1)(2), the trial court had twenty days from December 21, 2023, to determine Kines's competency to stand trial. *See id.* art. 46B.084(a-1)(2) (stating that "in a county with a population of less than 1.2 million . . . the court shall make the [competency] determination . . . not later than the 20th day after the date on which the court received notification under Article 46B.079").[10]

The January 12 status hearing was held nine days after Kines's return from NTSH, but it was not recorded.[11] On the same day, the trial court set the next status hearing for February 2, 2024. *Cf. id.* art. 46B.004(b) ("If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the

---

[9]The State likewise implicitly acknowledges that Article 46B.084(a-1)(2) applies.

[10]We note that two of the three days within the trial court's twenty-day period were legal holidays—Christmas Day and New Year's Day—and the third, the day after Christmas, was a state holiday. *See* Tex. Gov't Code Ann. §§ 662.003(a)(1), (9), (b)(8), .021 (stating that a "legal holiday" is a national holiday listed under Section 662.003(a) or a state holiday listed under Section 662.003(b)(1)–(6).

[11]Marsh's billing records reflect that she attended the hearing but do not reflect what was addressed at the hearing.

11

court on its own motion shall suggest that the defendant may be incompetent to stand trial.").

### 3. February and March 2024 hearings

The February 2, 2024 status hearing was recorded, but Kines's competency was not addressed. Instead, the trial court informed Kines that he was there for an attorney status hearing because at his previous hearing, he had "indicated that [he] wanted to hire counsel, but [he] still ha[d] not hired counsel." The trial court explained to Kines that "when you apply for court-appointed counsel, you don't get to choose the counsel of your choice." When the trial court asked Kines if he was going to work with Marsh, Kines replied, "I can work with her."

The trial court also explained to Kines that his case was "going to shoot right up to the top of the docket" and could be reached in March because of when he was arrested (October 2019), his return from NTSH (January 2024), and his duration of incarceration. *See id.* art. 46B.084(d)(2) (stating that if the trial court in a county with a population of less than 1.2 million finds that the defendant is competent to stand trial, the case against the defendant "shall be resumed as soon as practicable after the date of the court's determination under this article that the defendant's competency has been restored"). Kines stated that he understood.

The prosecutor then asked the trial court to explain to Kines that, based on Kines's prior criminal history, "his exposure is 25 to life on each and every count,"[12] *see* Tex. Penal Code Ann. § 12.42(d), and that the State would not extend any further plea offers at the hearing's conclusion, regardless of whether Kines obtained new counsel, because "most of this is all on video." Marsh stated that she had advised Kines that his habitual-felony-offender status would raise his minimum sentence to twenty-five years if they proceeded to trial, *see id.*, that the trial court had the right to stack his sentences, *see* Tex. Code Crim. Proc. Ann. art. 42.08(a) (addressing cumulative sentencing), and that he would likely be first on the March 18, 2024 docket, *see id.* art. 46B.084(d)(2). The trial court asked Kines if he had understood what the prosecutor and Marsh had said about his case. Kines replied that he did and that he still wanted to go to trial and not to take a plea deal.

An early March 2024 pretrial hearing was not recorded.

### 4. March 2024 jury trial

Before the venire panel was brought in on March 18, 2024, the trial court admonished Kines about his right to remain silent, reminded Kines that Marsh had been appointed to represent him, and encouraged him to participate in his defense. Kines then complained that the only time he had been able to speak with Marsh was

---

[12]Before trial, the State filed its amended notice of intent to seek an enhanced punishment range based on Kines's prior felony convictions for aggravated assault on January 10, 1985, and forgery on December 3, 1986.

13

at court, which—based on the record—would have been at the January 12, February 2, and March 8 hearings.

Marsh advised the trial court that Kines had refused to engage with her and to participate in his defense despite "multiple pretrial hearings, multiple opportunities to visit about this case." She recounted that they had frequently disagreed on his defense strategies and that Kines had asked for things "that cannot be done under the law, so [she] ha[d] instructed him as such."

### a. The trial court's competency determination

The trial court then conducted the following colloquy with Kines:

THE COURT: I need to do one more thing on the record, too, before we start. Mr. Kines, I'm sorry, if you will, please, stand up.

And is it correct, you've been in a psychiatric facility, correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Is there -- are you currently being treated by a psychiatrist?

THE DEFENDANT: No.

THE COURT: Okay. Are you on any medications that would impair your ability to understand the proceedings today?

THE DEFENDANT: Prozac.

THE COURT: I don't need to know what they are.

THE DEFENDANT:  I don't know.  I can't -- I don't know half the stuff I'm taking.[13]

THE COURT:  Okay.  But you're able to understand what we're doing here today?

THE DEFENDANT:  Somewhat.

THE COURT:  And have you been able to assist your attorney with preparation for trial?

THE DEFENDANT:  No.

THE COURT:  But is that from a lack of cooperation or is that because you can't assist her?

THE DEFENDANT:  I can't assist her.

THE COURT:  How?  In what way have you not been able to assist her?  Have you been able to talk to her?

THE DEFENDANT:  No.

THE COURT: You've been able to talk to her when she's here in court?

THE DEFENDANT:  That's it.

THE COURT:  Well, that's how most defendants --

---

[13]When a defendant has been released from a state hospital into custody of the sheriff's office, the sheriff's office is responsible for providing to the defendant "the types and dosages of medication prescribed for [him]" unless "the sheriff determines that funds are not available from the [S]tate [for] reimburse[ment]." Tex. Code Crim. Proc. Ann. art. 46B.0825.  Nothing in the record explicitly suggests that the sheriff determined not to provide Kines's medication to him or that Kines was not taking his prescribed medication in the required dosages, although during the punishment phase, Kines's mother and aunt expressed concerns about his diabetes treatment after he left NTSH.

15

THE DEFENDANT: The only thing she's told me is that I'm guilty, take the plea bargain.

THE COURT: All right. Ms. Marsh, do you have any representations to make to the Court about Mr. Kines's competency to stand trial?

MS. MARSH: It's my understanding that the state hospital declared him restored to competency. I have attempted on multiple occasions to discuss his case with him. He has refused to listen to the advice I've given him, and he has indicated that he would not continue to speak with me on multiple occasions. I understand he had previous attorneys and they had the same interactions with him.

As far as being able to hold a conversation with him, there are times, yes, we are able to hold conversations when he is cooperative with me and to discuss things. But would I say this is ideal, no.

THE COURT: While not ideal, the fact that the state hospital has determined that he is competent to stand trial[14] and he's already been through that process, I find that his refusal to cooperate with counsel is not evidence of his incompetency, but just his lack of willingness to participate. I'll find that he is competent to stand trial.

*See id.* art. 46B.084(a-1)(2).[15]

### b. Guilt–innocence phase

During voir dire—after the panel had been questioned but before selection—

Marsh informed the trial court that Kines had asked her to see if he could retrieve his

---

[14]*See* Tex. Code Crim. Proc. Ann. art. 46B.084(a-1)(1) ("The court may make the determination [with regard to the defendant's competency to stand trial] based only on the most recent report that is filed under Article 46B.079(c) . . . and on other medical information or personal history information relating to the defendant.").

[15]If either the trial court or the parties thought that Kines was incompetent instead of obstinate, they had the procedural means to address that concern. *See* Tex. Code Crim. Proc. Ann. art. 46B.004(a), (b).

cell phone from jail property "so that he can refer to it for names and things like that to help him with this trial." Kines added, "It's got a text, a police report. And the first two lawyers that I had would not go get that police report." The trial court agreed to allow the phone to be released to Kines during a break so that he could review the text messages and discuss them with Marsh outside the jury's presence.

After the jury was selected and seated and the trial court read the indictment, Kines pleaded not guilty. During the State's case, in addition to the background facts set out above, one of the responding officers testified that verbal provocation is an insufficient justification for self-defense. *See* Tex. Penal Code Ann. § 9.31(b)(1) ("The use of force against another is not justified in response to verbal provocation alone.").

At the conclusion of the trial's first day, Marsh informed the trial court that Kines had indicated that he wanted to explain parts of the video and that he should be admonished about the dangers of testifying. After the trial court warned Kines that he would be subject to cross-examination if he testified and that it would be "ill-advised" for him to testify, Kines insisted that he wanted to testify.

The trial court explained to Kines that if he testified, he would have to answer the questions asked by the State and warned, "You can't decide some questions you want to answer and some you do not. Do you understand that?" Kines replied, "I do and I don't." The trial court was in the best position to interpret Kines's answer and could have determined that Kines meant that he understood that he was supposed to answer the State's questions but that he would not answer all of them, or that he

17

understood the rule but did not understand why that was the rule, and not that he lacked the ability to understand the proceedings. *See* Tex. Code Crim. Proc. Ann. art. 46B.005(d) ("If the issue of the defendant's incompetency to stand trial is raised after the trial on the merits begins, the court may determine the issue at any time before the sentence is pronounced."); *see also id.* art. 46B.003(b) ("A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence.").

The trial court gave Kines the night to think it over and to "[t]hink about the legal advice that [his] attorney ha[d] given [him] about the consequences" of testifying and "what questions the State might could ask" him in front of the jury. The next morning, Kines stated that he no longer wanted to testify, and the State—to prove up the count alleging unlawful possession of a firearm by a felon—brought forth evidence that Kines had a March 8, 2013 state-jail felony conviction for burglary of a building and that he had been released from confinement more than five years before the October 21, 2019 altercation. *See* Tex. Penal Code Ann. § 46.04(a)(2) (stating that a person commits unlawful possession of a firearm if—after the fifth anniversary of release from confinement following a felony conviction—he possesses a firearm "at any location other than the premises at which [he] lives").

The trial court included a self-defense instruction in the charge upon defense counsel's request. During closing, the prosecutor relied on the video evidence, which showed that Kines had pursued the teenagers before committing the aggravated

18

assault with a firearm. Defense counsel relied on Kines's assertion, recorded in the jail call, that he had thought the teenagers were "gang[-]bangers" to argue that he had acted based on a reasonable apprehension of danger. *See id.* § 9.31 (defining self-defense). She further argued that because Kines was homeless, he had no premises and so could not be found guilty of possessing a firearm at a place other than his premises. *See id.* § 46.04(a)(2).

In rebuttal, the prosecutor pointed out that Kines had "pistol-whipped a child on video and then [led] the police straight to the gun." The jury found Kines guilty of both counts.

### c. Punishment phase

Kines pleaded "true" to both enhancement allegations after conferring with his counsel outside the courtroom. The enhancement allegations pertained to Kines's January 10, 1985 aggravated-assault conviction,[16] for which he was sentenced to six years' confinement in the Texas Department of Corrections, and his December 3, 1986 forgery conviction, for which he was sentenced to four years' confinement in the Texas Department of Corrections.

The trial court also admitted evidence of Kines's other Texas convictions between 1986 and 2014, most of which were nonviolent misdemeanors, although he

---

[16]Kines had pleaded guilty to the State's allegation that on September 15, 1984, he had intentionally or knowingly caused bodily injury to Al Dean Gates by shooting him with a .22 caliber handgun.

also had an assault–family violence conviction in 2011 and an assault–bodily injury conviction in 2013, in addition to his 2013 burglary conviction. The trial court also admitted into evidence Kines's out-of-state convictions.

During the defense's case, Kines's mother and aunt asked for leniency. Both obliquely referenced Kines's state-hospital stay.[17]

### d. Judgments of conviction and subsequent filings

The trial court's March 20, 2024 judgments state, "It appeared to the Court that Defendant was mentally competent to stand trial." *Cf. Bradford*, 172 S.W.3d at 5 ("[T]he record before us contains no judgment, order, docket sheet entry, or other statement or evidence showing that the trial court made a determination that Bradford had regained competency after its June 3, 2003 judgment finding that she was mentally incompetent."). Kines's appellate counsel filed a motion for new trial, which complained that the verdict was contrary to the law and the evidence and sought a new trial "in the interests of justice" but which did not raise any of his Article 46B timing-and-procedure complaints.

---

[17]Kines's mother stated that he "went to Vernon and they got control of his being a diabetic and started helping him." Kines's aunt also referenced the state hospital, observing that Kines had slowed down "since he came back from the Vernon rehab -- or facility there in his vision and how he speaks and everything." Dr. Mutinda's report reflects that Kines was transferred from NTSH's Vernon campus to the Wichita Falls campus on December 4, 2023, "after having been found Not Manifestly Dangerous by the Dangerousness Review Board."

## C. Analysis

Kines argues that he was egregiously harmed and denied due process when the trial court arbitrarily found that he was competent to stand trial without a timely and proper competency determination. Specifically, he complains that

- the trial court violated Article 46B.084(a-1)(2) by waiting over seventy days—from January 3 to March 18—to determine his competency instead of doing so within the statutory twenty days and thus caused "a very real risk of deterioration in Kines's mental condition, which was ignored by the trial court";

- it "was clearly 'practicable' for the Court to have provided defense counsel with a notice of [his] return from [NTSH] as early as January 12, 2024, since a 'Status Hearing' was held on that day";[18]

- despite the Code of Criminal Procedure's "meet and confer" requirement, Marsh "wholly failed to meet with [him] at the jail and only conversed with him during his brief, sporadic court appearances"[19]; and

- the trial court could not rely on Marsh's lay opinion that Kines was competent because her opinion presented a significant potential for a conflict of interest and constituted evidence of no probative value because it was based solely on speculation or conjecture.

---

[18]The record reflects that Marsh attended the January 12, 2024 hearing. Article 46B.084(a)(1) does not state *how* the trial court "shall notify" the parties about the defendant's return to the court, *see* Tex. Code Crim. Proc. Ann. art. 46B.084(a)(1), but at a minimum, Marsh was notified about his return at the January 12 hearing, and under Article 46B.084(a)(2), the trial court was to provide the notice "as soon as practicable," which—without any information about the trial court's docket—may have been January 12, *see id.* art. 46B.084(a)(2).

[19]Article 46B.084(a)(2) does not state *where* defense counsel "shall meet and confer with the defendant." *See* Tex. Code Crim. Proc. Ann. art. 46B.084(a)(2). The "meet and confer" requirement is so that defense counsel may "evaluate whether there is any suggestion that the defendant has not yet regained competency." *Id.* art. 46B.084(a)(1).

The State responds that the trial court properly found Kines competent to stand trial based on an expert's opinion that he was competent and on the trial court's first-hand assessment of his competence; that Kines has forfeited his complaints about alleged noncompliance with Article 46B.084's procedures; and that the trial court's failure to make an express competency finding within twenty days of learning of Dr. Mutinda's report does not invalidate the properly-supported finding that the trial court made before trial.

The record reflects that the trial court received Dr. Mutinda's report on December 21, 2023, and—as pointed out by the State—the record does not show that the trial court did not review the report. To the contrary, the trial court acknowledged the report while assessing Kines's competency, noting "the fact that the state hospital has determined that he is competent to stand trial" before finding him competent to stand trial.

But just as we may not infer that the trial court did not review the report, we may not infer, from the absence of a record of the January 12, 2024 status hearing, that the trial court made a judicial determination of Kines's competency at that time. *See Schaffer*, 583 S.W.2d at 630–31. Kines's competency was also not expressly addressed at the February 2024 status hearing. But immediately before trial, the trial court questioned Kines and then expressly found him to be competent after relying not only on Marsh's evaluation of her client but also on Dr. Mutinda's report. *See*

Tex. Code Crim. Proc. Ann. art. 46B.084(a-1)(1). Kines has never contested Dr. Mutinda's conclusion about his competency or her conclusion's underlying factual support.

Further, the trial court's judgments restate its express finding of Kines's competence to stand trial. *See Cooper*, 333 S.W.3d at 866 (concluding that the trial court determined the appellant's competency before accepting his guilty pleas—despite the inability to determine the exact moment of the competency determination—because the record reflected that the trial court had the opportunity to consider the appellant's competence before trial, that it had thoroughly admonished him before trial, and that it had the opportunity to evaluate his mental competence both before and during trial, and the punishment charge and judgments reflected the trial court's finding that he was mentally competent to stand trial).

As the factfinder, the trial court was entitled to determine Kines's competence and to make the competency findings from its interactions with Kines—both before trial and during trial—and to find that Kines could understand the proceedings but was unwilling to be tried based on his refusal to cooperate and to communicate with counsel. *See id.* We cannot second-guess the trial court's determination because it was in the best position to determine whether Kines had the present ability to go forward with the criminal proceedings against him. *See Turner*, 570 S.W.3d at 262; *McDaniel*, 98 S.W.3d at 713; *Timmons*, 510 S.W.3d at 718.

23

Regarding Kines's remaining timeliness-and-procedure complaints under Article 46B.084, even if Kines had preserved these complaints for our review, *cf.* Tex. R. App. P. 33.1,[20] the record reflects that the trial court made the competency determination at the most relevant time: immediately preceding trial. *See Jones v. State*, No. 02-23-00060-CR, 2024 WL 368988, at *4 (Tex. App.—Fort Worth Feb. 1, 2024, pet. ref'd) (mem. op., not designated for publication) (reaching same conclusion on similar facts). Notwithstanding Kines's speculation about harm,[21] based on this record, which contains the trial court's competency determinations and which does

---

[20]The State asserts that Kines forfeited his complaints about noncompliance with Article 46B's provisions by failing to raise them in the trial court "at any time after the trial court found him competent," referring us to *Bullock v. State*, No. 12-13-00236-CR, 2014 WL 3939784, at *3 (Tex. App.—Tyler Aug. 13, 2014, no pet.) (mem. op., not designated for publication), and *Hewitt v. State*, No. 12-08-00068-CR, 2009 WL 765308, at *3 (Tex. App.—Tyler Mar. 25, 2009, no pet.) (mem. op., not designated for publication). Both of these cases hold that after the trial court has found the defendant competent, the defendant must object to preserve for appellate review a complaint that the trial court failed to follow Article 46B.084's requirements. *See Bullock*, 2014 WL 3939784, at *3; *Hewitt*, 2009 WL 765308, at *3.

[21]Kines contends that, while incompetent, he rejected a plea bargain and waived his right to testify. But after the trial court made its March 2024 competency finding, no one sought to reinitiate plea negotiations based on the lack of a previous competency finding. *Cf.* Tex. Code Crim. Proc. Ann. art. 46B.004(a)–(b) (stating that either party or the trial court may suggest that the defendant may be incompetent and that "[i]f evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial"). And Kines did not complain of incompetency—and the record does not reflect any incompetency—when he opted not to testify at trial. *See id.* art. 46B.003(a)–(b) (defining incompetency and setting forth the presumption of competency). Kines also does not raise an ineffective-assistance-of-counsel issue in this appeal.

24

not reflect any incompetency between Kines's return to the trial court and trial, *cf. Boyett*, 545 S.W.3d at 566,[22] we conclude that Kines was not harmed, and we overrule his sole issue. *See* Tex. R. App. P. 44.2(b) (requiring any nonconstitutional—i.e., statutory—error to be disregarded if it does not affect the appellant's substantial rights).

## IV. CONCLUSION

Having overruled Kines's sole issue, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 6, 2025

---

[22]In *Boyett*, the Court of Criminal Appeals observed that there was some evidence of incompetency based on testimony that the appellant had a history of serious mental illness, was exhibiting behavior consistent with her prior episodes of mental illness, was acting in a manner suggesting she was divorced from reality, and was unable to understand basic aspects of the trial evidence and proceedings. 545 S.W.3d at 566. Here, in contrast, the record reflects that Kines requested and received his cell phone, was able to consider whether to testify, and pleaded "true" to the enhancement allegations after conferring with his counsel. While his aunt testified during the punishment phase that Kines had suffered depression after his wife died, there was no evidence presented that he currently suffered depression or how that might relate to his ability to consult with his counsel with a reasonable degree of rational understanding or his understanding of the proceedings against him.

25