

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00418-CR

_____

DAVID CLEM ALLEN, JR., Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR16277

_____

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

### I. Introduction

A jury found Appellant David Clem Allen, Jr. guilty of evading arrest or detention with a vehicle, a third-degree felony, and assessed his punishment at six years' confinement. *See* Tex. Penal Code Ann. §§ 12.34, 38.04(a), (b)(2)(A). In two issues, Allen complains that the evidence is insufficient to support his conviction and that his counsel was ineffective. Because the record supports neither complaint, we will affirm.

### II. Sufficiency

In his first issue, Allen complains that the evidence is insufficient because "there was no evidence [that he] committed any affirmative acts proving his intent to evade arrest" during the fifty-four-second "slow-rolling" chase. Specifically, Allen asserts that he "did not speed, he made no evasive movements, he did not violate any traffic laws, and he did not endanger any other motorists during the fifty-four seconds [Sergeant Fernando] Martinez was driving behind him."

The State responds that it is not required to show affirmative acts if the offense's elements are proved beyond a reasonable doubt and that here, through testimony and video evidence, all the elements were so proved.

### A. Standard of review and applicable law

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

2

307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

## B. Evidence

During the trial's guilt–innocence phase, three officers from the Hood County Sheriff's Office testified about the events that occurred just before midnight on September 22, 2023. A dashcam video, a body-camera video, and an in-car video were admitted into evidence and published to the jury. Allen's counsel described Allen as 64 years old and 120 pounds, a description the videos support.

### 1. Videos

The dashcam video showed the activation of the patrol car's red and blue lights as soon as Allen's silver Prius came into view. A few seconds later, the patrol car's sirens activated. The patrol car and the Prius were the only vehicles on the road. Instead of stopping immediately, the Prius continued down the street, with Allen making some

sort of gesture by sticking his hand out of the vehicle before turning the Prius onto another street. The Prius "slow roll[ed]" to a stop less than a minute after pursuit began.

The officers then repeatedly ordered Allen to show his hands, to get out of the car, and to put his phone down. Thirty seconds later, when Allen stepped out of the car and showed his hands, an officer ordered him to turn around and walk backwards toward the sound of his voice. When Allen failed to comply, four officers converged on him, and three took him to the ground and handcuffed him while the fourth provided cover with a rifle.

The body-camera video showed Deputy Cody Stone's pursuit as he followed both Sergeant Martinez's vehicle and Allen's Prius. From this video, Allen can be heard agreeing to get out of the vehicle, stating, "There's no need to treat me like an animal," and then cursing at the officers. As they approached him, Allen told the officers that he knew they had been looking for him all over the place but that he had done nothing to anyone. As Allen struggled against the officers, he complained that they were beating him up for no reason and demanded, "Why are you doing this to me?" and "Why are you treating me like this?" While Allen was placed in the back of a patrol car, another officer retrieved his phone and a nearby bottle of eye drops, stating, "I don't know what this is." Allen's pockets contained a THC vape pen and the Prius's key fob, and an

4

officer remarked that Allen's brother's house—a dope house[1]—was nearby. An officer noted that the only reason the Prius had stopped was "because it died."

The in-car video recorded Allen's transportation to jail. Allen continuously complained about how he had been treated and about other things going on in his life. Allen accused the officers of treating him like he had "done a f-cking murder or something," said that he had known that they had been looking for him, and explained that he had wanted them to talk to him at his brother's house because he was "scared to death" of what was "about to happen to [him]." He also stated that he was not worried about probation "because that ain't gonna happen."

## 2. Testimony

### a. Sergeant Martinez

Sergeant Martinez testified that the sheriff's office had received a call that night from the Godley Police Department about a warrant for Allen. They went to serve the warrant, but Allen was not at home. They went to another location, but the area around that house had no cover for them, and they had learned that he might be armed, so they staged nearby to watch for him.

When Sergeant Martinez saw Allen's vehicle drive by, he activated his marked patrol car's overhead lights and "attempted to make a felony stop since [Allen] had a

---

[1]One of the officers testified that a "dope house" is a residence used to sell illegal narcotics.

warrant out of Pardon and Parole." He saw Allen gesture from the car with his hand but did not understand what Allen was trying to signal. Sergeant Martinez followed Allen's vehicle down the street and through a right turn onto another street, where Allen's vehicle "died in the middle of the roadway." Sergeant Martinez stated that Allen initially refused to follow their instructions, and they escorted him to the ground where he kept resisting during arrest.

The prosecutor asked Sergeant Martinez about his aggressive shouting at Allen after the stop, and he replied, "I was trying to sound loud so that he could hear me. But also based on his actions of not stopping and having a warrant . . . out of Pardon and Parole, most people tend not to want to go back to prison or back to jail." Over Allen's counsel's objection, Sergeant Martinez agreed that he had been worried that Allen might do something to him, and he explained, "Most people that don't initially stop are trying to hide something. Like I said, we already knew he had a warrant for Pardon and Paroles. A lot of people don't want to go back to jail or prison, so they're willing to evade us, fight us, so that doesn't happen."

Sergeant Martinez testified that the tow-truck driver had to pull the Prius onto the tow truck and agreed that "the only reason that the vehicle stopped was because it was no longer drivable."

During cross-examination, Sergeant Martinez acknowledged that they had been driving "no more than 25 miles an hour" and that it was clear when Allen emerged from the vehicle that he did not have a weapon. The street was in a very quiet area, and on

redirect, he asserted that there could have been no confusion about who was being pulled over, and that when Allen stuck his hand out of the car, he took that as an acknowledgment that Allen knew he was there.

### b. Deputy Stone

Deputy Stone explained that Allen had a "blue warrant," that is, a warrant from the Pardon and Parole Board. He further explained that to be out on parole meant "that they've already been to prison, got out early and still serving their time." Deputy Stone had been with the sheriff's office for five years, during which time he had made "quite a few stops," and had arrested "quite a few people." He stated that any stop involves concerns about getting shot and about a suspect's fleeing, hiding evidence, or doing "something bad." He defined a "felony stop" as involving "anybody that [the officers] believe is dangerous," and said that Allen's stop was a felony stop because he had a parole warrant and did not pull over right away.

Deputy Stone stated that in evading cases, he had seen suspects drive very fast or very slowly and that it could still be evading even if it was a short evasion at low speed. He testified that when an officer activates his patrol car's lights, the other driver "is supposed to immediately pull to the right side of the road." By "immediately," he meant "[a]s quickly and safely as possible," and he stated that Allen did not do so even though he could have because there was no traffic or any other danger to his pulling over immediately. Instead—as the videos illustrated—Allen passed two driveways and other areas where he could have pulled over safely.

Deputy Stone said that he, Sergeant Martinez, and a third officer had kept watch for thirty to forty-five minutes in different nearby areas, waiting for Allen. In the video, it is his voice that described Allen's vehicle as "slow rolling," and what he meant by that was Allen's vehicle "is still not coming to a stop and is still actively driving down the road, just not at high speeds." Deputy Stone testified that he gave the Prius's key fob to the tow-truck driver, who was unable to start the vehicle; this confirmed for him that the vehicle had stopped not at Allen's volition but because of a mechanical issue.

Regarding the eye-drop container that he found on the ground next to Allen's phone, Deputy Stone testified that he had seen such containers hold methamphetamine or GHB, the "date-rape" drug. He had suspected at the time that the container's contents were drugs, but he did not think there had been any later confirmation. During cross-examination, Deputy Stone agreed that the vehicle stopped half a block from Allen's brother's house, which was one driveway away.

### c. Deputy Like

Deputy Justin Like drove Allen to jail. Allen told him that he knew the officers had been looking for him and waiting for him. Allen also told him that he had just wanted them to come talk to him at his brother's house. Deputy Like testified that it would have been a major safety issue to have stopped Allen at his brother's house because the officers did not know the people in the house, what Allen's intentions were, and whether it "could be a possible ambush situation." He also stated that "the simple

8

fact of not stopping when somebody is being lit up is going to raise [the officers'] suspicions."

**C. Analysis**

The indictment alleged that on or about September 22, 2023, Allen intentionally fled, using a vehicle, from Cody Stone,[2] knowing that Stone was a peace officer who was attempting to lawfully arrest or detain him. *See* Tex. Penal Code Ann. § 38.04(a). Based on the evidence set out above, the jury could have reasonably concluded that Allen's failure to immediately pull over on the dark, quiet road when the marked patrol car following him activated its lights and siren showed his intent to evade arrest, particularly when he acknowledged that he had known the officers were looking for him.

Although observing that "[t]he law does not require a particular speed, distance, or duration of pursuit to prove a defendant intentionally fled from police in a vehicle," Allen nonetheless asserts that the evidence did not show his intent to flee, contrasting his case to those in which drivers committed affirmative acts such as accelerating after activation of lights and sirens, committing dangerous traffic violations during pursuit,

---

[2]For a variance in the indictment to be material, it must mislead the accused to his prejudice. *Sartain v. State*, 228 S.W.3d 416, 422–23 (Tex. App.—Fort Worth 2007, pet. ref'd). Allen does not assert that there was a variance in naming Deputy Stone, and although the videos show that Sergeant Martinez's vehicle was directly behind Allen's Prius, they also show that Deputy Stone's vehicle was directly behind Sergeant Martinez's vehicle and also pursuing Allen's Prius.

9

or committing "other blatant acts" showing an intent to evade arrest in a vehicle. Allen contends that the evidence shows that he did not accelerate when Sergeant Martinez activated his lights and siren, that he did not endanger any other motorists on the road, that he did not run any stop signs, and that he jumped no curbs. He claims that the evidence instead shows that he waved at the officer as a signal that he saw him and that he was having car trouble, then decelerated before his vehicle died. Allen asserts that this court has held that evading arrest requires a defendant's affirmative act to show intent to evade, citing *Pool v. State*, No. 02-12-00640-CR, 2013 WL 4716019, at *4 (Tex. App.—Fort Worth Aug. 30, 2013, pet. ref'd) (mem. op., not designated for publication).

But in addition to being nonprecedential, *see* Tex. R. App. P. 47.2(b), *Pool*'s facts are inapposite. In that case, although we observed that evading-arrest cases "consistently [involve] some affirmative act to show that the accused is trying to evade an officer," we said that in the context of whether the evidence showed the defendant's actual awareness that the officer was pursuing him, evidencing his intent to flee. 2013 WL 4716019, at *2–6. We concluded that there was insufficient evidence to make that showing when, among other things, the defendant put on evidence that he had lost 75% of his hearing in one ear in childhood and the pursuit video showed that the officer had to put his vehicle in front of the defendant's motorcycle to get his attention. *Id.* at *2–3, *6.

Here, the evidence shows that Allen had known that the officers were pursuing him and that he had specifically intended for any confrontation with them at the

10

pursuit's conclusion to occur at his brother's house, which is where he would have ended his flight but for his vehicle's mechanical failure. That is, his intent was to flee from the officers, who he knew were attempting to lawfully arrest or detain him, by using a vehicle, even if the vehicle's condition forced the pursuit to take place at around twenty-five miles per hour and resulted in the vehicle's stranding him in the middle of the street before he could reach his intended destination. *See* Tex. Penal Code Ann. § 38.04(a). Because the evidence suffices to support his conviction, we overrule Allen's first issue.

### III. Effective Assistance

In his second issue, Allen argues that his attorney was ineffective by allowing the State to introduce evidence of his prior felony conviction during the trial's guilt–innocence phase. He contends that his counsel's failure to object "to the State's constant barrage of improper character evidence related to [his] prior felony conviction and parole warrant" harmed him.

The State responds that the evidence regarding Allen's active parole warrant was pertinent to Allen's motive and intent for evading arrest. The State correctly points out that there was no testimony during guilt–innocence about the conviction for which Allen was on parole and contends that Allen cannot show that he received ineffective assistance because nothing in the record shows that he would have been found not guilty if his counsel had objected. We agree with the State.

11

## A. Standard of review

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

*Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show a reasonable probability that the proceeding would have turned out differently without the deficient performance. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308.

Regarding the deficient-performance prong, an appellant claiming ineffective assistance of counsel at trial must identify counsel's allegedly erroneous acts and omissions. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *Cooper v. State*, 333 S.W.3d 859, 867 (Tex. App.—Fort Worth 2010, pet. ref'd). The appellate court then determines whether, in light of all the circumstances, these identified acts or omissions were outside the wide range of what constitutes competent assistance. *Strickland*, 466 U.S. at 690,

12

104 S. Ct. at 2066; *Cooper*, 333 S.W.3d at 867. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08. We may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

**B. Analysis**

Allen's appellate counsel filed a motion for new trial but did not raise ineffective assistance. At the motion's hearing, his appellate counsel merely appealed to the trial court's discretion to grant a new trial, and the trial court denied the motion.

13

Accordingly, we lack a record showing trial counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

Allen nonetheless directs us to the following, which he claims shows deficient performance:

- **No showing that the State responded to counsel's extraneous-offense-notice request.**

Allen appears to complain that his counsel was deficient for not objecting to the State's failure to respond to his extraneous-offense-notice request, but the record does not support this complaint. The record reflects that Allen's counsel filed a request for notice of the State's intent to introduce evidence during its case in chief of any other crimes, wrongs, or acts allegedly committed by Allen, and the State in fact complied, filing such a notice a week before trial. We overrule this portion of Allen's second issue.

- **Failure to request a hearing on the motion in limine.**

Allen's counsel had also filed a motion in limine regarding any of his prior convictions or alleged legal violations. Before trial began, counsel prompted the trial court, stating, "I'm not sure we ever got a ruling on the motion in limine." The trial court indicated that it did not see one filed but stated, "[C]ertainly the State is going to stay within the lanes that it knows it should stay within."

During a break in Deputy Stone's testimony, the trial court added that it had seen Allen's motion in limine in the online file but not the paper file. The trial court pointed out that mentioning Allen's warrant would be admissible "for purposes of showing

14

motivation to want to flee . . . [so] it wouldn't have changed the trial in any way, but I wanted to at least make the record clear that there was a motion in limine filed." Because the trial court essentially heard and ruled on the motion in limine, we overrule this portion of Allen's second issue.

- **Failure to object to the State's "opening the door" to his parole violation and allowing into evidence his prior convictions and prison experience during the trial's guilt–innocence phase**.

Allen contends that the jury needed to know only that he had a warrant and not that it was "blue," that he had a felony conviction, that he had been to prison, that he was on parole, or that he had violated his parole.[3] But a failure to object will not support an ineffective-assistance claim unless the trial judge would have erred by overruling the objection. *Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017). Together, Rules 404(b) and 403—the most likely objections—provide that extraneous-offense evidence is admissible only if (1) it is relevant apart from the tendency to show character conformity and (2) it is probative of some "elemental fact or an evidentiary fact of consequence to the determination of the action." *Ryan v. State*, 937 S.W.2d 93, 99 (Tex.

---

[3]Considering the evidence set out above, it is unlikely that the jury would have acquitted Allen of evading arrest if the warrant's type had not been disclosed, but based on our disposition here, we need not reach *Strickland*'s second prong. *See* Tex. R. App. P. 47.1.

App.—Beaumont 1996, pet. ref'd) (quoting *Vernon v. State*, 841 S.W.2d 407, 411 (Tex. Crim. App. 1992)).[4]

Because the parole violation and subsequent issuance of a "blue" warrant (and the officers' explanation of this type of warrant) showed Allen's motive or intent to flee, the trial court would not have abused its discretion by overruling objections to this information as long as the offense or offenses for which he was on parole were not introduced during the trial's guilt–innocence phase, and the record reflects that they were not introduced during this phase. *See Prine*, 537 S.W.3d at 117–18; *see also* Tex. R. Evid. 404(b)(2) (stating that evidence of crimes, wrongs, and other acts may be admissible to prove motive and intent, among other things that are not improper character-conformity evidence). *Cf. Ex parte Menchaca*, 854 S.W.2d 128, 131–32 (Tex. Crim. App. 1993) (holding that counsel's performance was deficient when defendant's prior rape conviction was not admissible for impeachment purposes, and counsel failed to file a motion in limine, failed to object, failed to request a limiting instruction, and referenced rape conviction during closing argument, prompting State to emphasize it).[5]

---

[4]Allen cites us to *Ryan* to support his argument that when counsel "opens the door" to extraneous-offense evidence, that error may constitute ineffective assistance. But if the extraneous-offense evidence was admissible, then the error is not ineffective assistance. 937 S.W.2d at 99.

[5]Allen refers us to *Menchaca* in arguing that when counsel permits the State to introduce evidence of a prior conviction during guilt–innocence, counsel "likely provides ineffective assistance." But in *Menchaca*, the conviction (rape) was identified and used to impeach the defendant's credibility as a witness in his trial for delivery of 0.13 grams of methamphetamine. 854 S.W.2d at 129–32. The determination of the

16

Accordingly, trial counsel's failure to object here does not support his ineffective-assistance claim, *see Prine*, 537 S.W.3d at 117–18, and we overrule this portion of Allen's second issue.

- **Failure to object to testimony about his "dangerous" and violent nature and speculation that the eye drops found near his phone "possibly contained" illegal drugs.**

We will not infer ineffective assistance from a record that does not show why counsel failed to do something, *see Mata*, 226 S.W.3d at 432, and the failure to object can be a strategic move that is part of sound trial strategy, *Stafford v. State*, 813 S.W.2d 503, 508 (Tex. Crim. App. 1991). A silent record will not overcome the presumption that counsel's actions were part of a strategic plan. *Tong v. State*, 25 S.W.3d 707, 714 (Tex. Crim. App. 2000). Counsel could have chosen not to object to the eye-drop speculation, for example, to avoid unnecessarily emphasizing drugs when a THC vape pen was found on Allen during his arrest, and his destination that evening—his brother's house—was a dope house. For the same reason, counsel might not have objected to the officers' speculation about Allen's dangerousness and potential for violence to avoid

---

defendant's guilt "rested entirely on the credibility of the witnesses" such that his rape conviction "permeated the entire guilt-innocence phase of the trial." *Id.* at 133. Because counsel's deficient performance undermined the defendant's credibility—the very heart of his defense—it sufficed to undermine confidence in the verdict and, hence, met both prongs of *Strickland. Id.*

Here, in contrast, Allen did not testify during trial, and his conviction for retaliation was not identified until the trial's punishment phase. *Cf. id.*

drawing the jury's attention away from Allen's age and diminutive stature when compared—on video—to the three younger, armed, and physically imposing officers who took him to the ground.

On this record, trial counsel's failure to object cannot support Allen's ineffective-assistance claim, and we overrule this portion of his second issue.

- **Failure to object to the State's closing argument about his blue warrant and suggestion that he might have been planning a break-in.**

The prosecutor argued, "You don't want someone who has an active felony warrant, a blue warrant, for . . . issues . . . with parole, you don't want to let someone like that to be able to roll around wherever they want to *and get to some house who we don't know who's there and what's going on*." [Emphasis added.] This portion of the prosecutor's argument followed statements about Allen's "just want[ing] to make it to his brother's place," and that he did not get to pick where he would be pulled over, clarifying that the concern was not that Allen planned to break into his brother's house but rather that he might have planned an ambush for the officers in pursuit. And as stated above, because the record is silent about why counsel did not object to the prosecutor's argument, *see id.*, this failure to object cannot support Allen's ineffective-assistance claim, and we overrule the remainder of his second issue.

### IV. Conclusion

Having overruled both of Allen's issues, we affirm the trial court's judgment.

18

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 21, 2025